May Term,<br>1830.<br><br>Howk<br>v.<br>Kimball.

---

Tuesday,<br>May 11.

---

### Howk v. Kimball and Another.

If a debtor pay his judgment-creditor a sum equal to the amount of the judgment, and thereby cause the judgment to be assigned as a payment to another of his creditors, the transaction does not discharge the judgment, but the same continues valid in the hands of the assignee.

ERROR to the *Clark* Circuit Court.

Holman, J.—*Kimball* and *Gerry* each held a judgment against *Faulkner* and *Jacob Teeple*. *Kimball's* judgment was the eldest, and was replevied with *Moore* as replevin-surety: *Gerry's* was afterwards replevied with *Moore* and *Anderson* as sureties. A lot in *Charlestown*, the property of *Jacob Teeple*, was executed and sold on *Kimball's* judgment, and *Kimball* became the purchaser; leaving about 50 dollars of his judgment unsatisfied. It seems that, notwithstanding the sale of the said lot, *Teeple* still held a claim to it, which *Kimball* was disposed to extin-

Tuesday,<br>May 11.

guish; and, in consideration of a deed by said *Teeple* relinquish ing to *Kimball* all said *Teeple's* claim to said lot, *Kimball* paid the said *Teeple* the sum of 100 dollars, and assigned to *John Teeple*, son of the said *Jacob*, the balance still due on his said judgment. After this transaction, an execution issued on *Gerry's* judgment, which was levied on a tract of land, the property of *Moore*, the surety in both replevin-bonds; which tract of land was sold by the sheriff on said execution, and *Howk*, the complainant, became the purchaser. After this purchase, *John Teeple* caused an execution to be issued for the balance due on *Kimball's* judgment, and had said execution levied on the said tract of land; claiming a lien on said land by virtue of the elder judgment. *Howk*,—contending that the transfer of the judgment from *Kimball* to *John Teeple*, was in fact and equity a transfer to *Jacob Teeple*, and consequently a discharge of said judgment, and that the holding up of the same as unsatisfied, and issuing an execution thereon, was a fraud upon *Moore* the surety, and the creditors of *Jacob Teeple*,—filed his bill in chancery, making *Kimball* and the two *Teeples* defendants, praying an injunction, &c. The defendants answered, admitting the general statements in the bill but denying fraud, and alleging that the transfer of the judgment from *Kimball* to *John Teeple*, was in payment of a debt due from *Jacob Teeple* to *John Teeple;* said *John* having paid 52 or 53 dollars for the benefit of said *Jacob*. A general replication was filed. The cause was then heard in the Circuit Court on bill, answers, and exhibits; and the bill was dismissed.

The only question here presented, is, was *Kimball's* judgment discharged by *Jacob Teeple* in his contract with *Kimball?* In settling this question, it must be taken that this transaction between *Kimball* and the two *Teeples* was conducted with good faith; the charge of fraud in the bill being expressly denied by all the answers. So that we are not to presume fraud, unless it arises by intendment out of the premises. It is also evident, that *Jacob Teeple* did not intend to discharge the judgment in his contract with *Kimball*. So that, if the judgment is to be considered as discharged, it must be on the ground that *Jacob Teeple* could not stipulate for a transfer of the judgment to a third person, and pay the consideration of that transfer, without neces-

sarily discharging the judgment, and thereby defeating the intention of his stipulation.

Taking this transaction in its simplest form, and giving it all its force in behalf of the complainant, let us consider it as if *Jacob Teeple* had paid to *Kimball* a sum equal to the full amount due on the judgment, as the consideration of the transfer from *Kimball* to *John Teeple*. Now it is well settled, that a payer may direct the manner in which his payments are to be applied; and there can be no question but that while *Kimball* held the judgment against *Jacob Teeple*, said *Jacob* might have paid him several sums of money for various purposes, without discharging the judgment. If *Jacob Teeple* had paid him a sum equal to the amount due on the judgment, to be applied to some specific purpose, and he had so applied it, it could not be pretended that the judgment would have been thereby discharged. If, for example, *Jacob Teeple* had placed money in his hands to be paid over to *John Teeple*, and he had paid it accordingly, the judgment would not have been affected by that transaction. In this view of the case, we are supposing that *Kimball* was to pay *Jacob Teeple* 150 dollars for the lot; 100 dollars to be paid to *Jacob Teeple* himself, and the balance to satisfy a debt which he says he owed to *John Teeple*, or at least to secure it by a judgment. The payment of the judgment formed no part of the stipulations. The transfer of it, as so much money, from *Kimball* to *John Teeple*, was no more like a discharge of it, than if *Kimball* had paid the money to *Jacob Teeple*, and *Jacob* had paid it to *John*, and *John* had purchased the judgment from *Kimball* with it; which might have been done in good faith, and have produced the same result as has been produced by the agreement under consideration. So that if *Jacob Teeple* did really, in relinquishing his claim to the lot in *Charlestown*, pay to *Kimball* a price equivalent to the balance due on the judgment, as the consideration of the transfer from *Kimball* to *John Teeple;* yet as the judgment never became his, and as he did not intend to discharge it, it never was discharged either in law or equity. We see nothing in the transaction more unfair than the preferring one creditor to another. It seems that *Jacob Teeple* had a price in his hands, by which he might have discharged the judgment, and exonerated his surety *Moore*, and also furthered his creditor *Gerry* in the collection of his judgment; but he pre-

May Term,
1830.

ferred to let the judgment remain unsatisfied, in order to secure a debt which he says he owed to his son. But neither *Moore* nor *Gerry* has any greater reason to complain, that *Jacob Teeple* did not pay off the judgment, instead of stipulating for its transfer, than they have to complain that he did not pay it off with a part of the 100 dollars he received from *Kimball,* or that he did not apply the balance of the money he obtained from *Kimball,* in lessening the judgment of *Gerry* and the responsibility of *Moore.*

But it is not conclusive in this case that *Kimball* received, or supposed he received, a full equivalent for this judgment as a consideration of the transfer. He too might have had his preferences; and he might have been willing to transfer the judgment to *John Teeple,* for a smaller consideration than that which would have induced him to enter a discharge of the judgment in favour of *Jacob Teeple.* Besides this, the means by which *Jacob Teeple* procured this transfer to his son, as well as the 100 dollars to himself, seem, on the part of *Kimball,* to have been wholly gratuitous. As far as we are informed, *Kimball,* by his purchase at sheriff's sale, had as complete a title to the lot in *Charlestown,* as either the law or *Jacob Teeple* could give him. So that *Jacob Teeple* had no claim to the lot either in law or equity. And neither law nor equity requires a resort to rigid constructions, in search of fraud in the disposition of a fund, which seems to have been obtained from *Kimball* more as a matter of favour than as a matter of right.

We, therefore, discover nothing fraudulent in the transfer of this judgment to *John Teeple*: nothing to prevent him from collecting the balance due upon it. Consequently, we see no reason for reversing the decree of the Circuit Court.

*Per Curiam.*—The decree is affirmed with costs.

*Howk,* for the plaintiff.

*Thompson,* for the defendants.