## SELZ v. UNNA.

1. Equity will not grant relief where the allegations of the complainant show that he has no title nor interest in the subject-matter of the dispute.

2. Nor, in an action where all are liable (as *ex: gr.* an action of trespass against tort-feasors), enforce a secret agreement made by the plaintiff with certain of the defendants, that if *they* will desist from resistance to his suit, he will, if he recovers judgment, not levy execution on *their* property; litigants being bound to act fairly to each other, and such an agreement operating as a fraud.

3 Although the assignee of a judgment takes it subject to all defences that existed against it in the hands of the assignor, yet such an agreement as that above mentioned constitutes no defence as against an assignee in good faith, and without knowledge of the secret agreement; the verdict and judgment having been regularly entered against *all* the defendants.

4. Equal contribution among tort-feasors is not inequitable, although the law will not support an action to enforce contribution where the payments have been unequal.

Hence, where a marshal has received three-fourths of the amount of a judgment from three of four defendants, tort-feasors, he does nothing inequitable in collecting, under agreement with them that he shall do so, the residue from a fourth.

APPEAL from the Circuit Court for the Northern District of Illinois.

Unna sued four different parties, of whom Selz and Leopold were one, for a tortious levy which they had made on his property, assuming it to be the property of one of their debtors. When the suit was about to be tried a second time—the jury having once been unable to settle upon a verdict—Unna agreed with Selz and Leopold (as they alleged) that if *they* would desist and abstain from *all participation in the preparation and conduct of the defence thereof,* he would protect and save them harmless from all loss and damage, under whatever judgment he might recover, and would so control and direct the collection thereof that no part of the same should be paid by or collected from *them* under any execution issued thereon. In pursuance of the agreement, Selz and Leopold and their counsel did withdraw from the defence of the suit. Judgment having gone in favor of Unna and against all four parties,—and all four standing on the record as convict alike,—Unna after a certain time assigned the judgment to two persons whom this court regarded, upon the evidence, as purchasers in good faith, and without knowledge of the secret agreement; his assignment covenanting " that he had neither made, done or suffered any act or thing by which the said judgment is in any manner impaired or lessened in value." The assignees having issued execution, proceeded to levy on property of some of the three defendants. The whole three then agreed to pay him three-fourths of the judgment, it being understood that for the remaining fourth the assignees should look to Selz and Leopold. For that fourth the assignees accordingly resorted to them, levying upon and selling certain real estate as the

property of Leopold. Thereupon Selz and Leopold filed bills in equity against Unna and the three other defendants and the assignees, setting up the agreement with Unna; alleging that the three other defendants had paid the *whole* amount of the judgment, which was therefore satisfied; that the assignees were but covers for these other defendants who had had the assignment made in order to obtain contribution from them, Selz and Leopold. It was alleged as well that the real estate levied on, though once Leopold's, was not so now, it having been sold by his assignees for creditors some time ago. The prayer was for an injunction against the marshal's making any deed for *Leopold's interest in the real estate*, and from *further* proceedings to collect the judgment, and that it should be declared satisfied of record, as it was alleged to be in fact.

The answers denied the equities of the bill generally, and especially all knowledge of "the fraudulent agreement;" denied that the judgment had been paid, on the contrary asserted that it was unpaid; and asserted also that the assignment was *bonâ fide*. The court below dismissed the bills. Appeal accordingly.

*Messrs. Gookins and Roberts, for the plaintiff in error:*

Even assuming, as opposite counsel does, that the assignment was *bonâ fide*, and without knowledge of the agreement of Unna with Selz and Leopold, which is assuming what *we* regard as against the evidence, still the decree below was wrong. Surely, Unna cannot, in a *court of equity*, say that this agreement is not binding on *him*. His assignees are in no better situation than himself.*

Then, as to the matter of contribution. Since the well-known case of *Merryweather* v. *Nixan*,† in the time of Lord Kenyon, C. J., the authorities bearing upon the question of

---

* Row v. Dawson, 2 Leading Cases in Equity, part 2, p. 236, and cases there cited; and see McJilton v. Love, 13 Illinois, 495, citing Himes v. Barnitz, 8 Watts, 39; Chamberlin v. Day, 3 Cowen, 353.

† 2 Smith's Leading Cases, 6th ed. 527; reported from 8 Term, 186.

contribution in like cases to this, are almost uniform that it will not be enforced at law, or in equity.*

*Mr. McKinnon, contra:*

It may be remarked, primarily (though this matter was not relied on below), that the complainants have no right, title or interest in or to the real estate, in respect to which they seek to enjoin the marshal from making a deed. The bill states that it was sold long ago. But passing to other matters:

1. The consideration whereon the complainants found their claims to the relief prayed, is inequitable. Look at the case: Honest creditors engaged in a common defence against a suit for a levy which they *believed* that they had a right to make, and where they have been so far successful that one jury has failed to agree on a verdict. These complainants, Selz and Leopold, just as the case was called for trial a second time, secretly, and without the knowledge of their co-defendants, by agreement with the common prosecutor, Unna, desist and abstain from all further participation in the defence, and with their counsel retire from the court-room, leaving their confederates to suffer, while they went free. "*Equality is equity.*" That is one maxim of equity, old as equity itself. Another is, "*He that hath committed iniquity shall not have equity.*"

2. Are these assignees within the meaning of the rule that the assignee of a chose in action takes it subject to all the equities existing between the original parties? In no just sense. We here rely on what was said in the court below (Drummond, J.):

"Admit the general rule, that the assignee of a judgment takes it with all the equities that there may be, and that these equities can be set up as well against the assignees as against the assignor. Yet such an agreement as this, which is not an equitable, *but an inequitable agreement,* so far as the other defend-

---

* See Farebrother *v.* Ansley, 1 Campbell, 343; Wilson *v.* Milner, 2 Id. 452; Nelson *v.* Cook, 17 Illinois, 443.

ants are concerned, cannot be set up in a case like this, to protect them from a liability which, when the judgment was obtained, was as binding on them as on the other parties, defendants in the case."

So too as to the question of contribution, we adopt its remarks:

"The general rule undoubtedly is, that there can be no contribution between wrongdoers, and this was an action of trespass against these parties. This rule has been qualified considerably; many exceptions already exist under it,* and it is doubtful whether the rule could be said to operate in a case like this. At any rate, I am not disposed to grant these plaintiffs relief until I am satisfied that they have done equity as to the other defendants."

Mr. Justice CLIFFORD delivered the opinion of the court.

Material facts are that David Sternberg and Edward Isidor, doing business at Chicago under the firm name and style of Sternberg & Isidor, became largely indebted, and being unable to make payments as promptly as certain of their creditors desired, they confessed judgments in their favor. Judgments were thus obtained by Morris Selz and Abraham Cohen, doing business under the name and style of Selz & Cohen; by Henry A. Kohn and Joseph Kohn, under the name and style of H. A. Kohn & Brother; by William M. Ross and John H. Ross, under the name and style of William M. Ross & Company; and by Leonard B. Shearer, William W. Strong, and John S. Paine, doing business under the name and style of Shearer, Paine & Strong.

Executions were issued on these several judgments, and they were placed in the hands of the sheriff of the county, with directions to levy the same on certain goods and chattels, as the property of the judgment debtors.

Doubts being entertained by the sheriff as to the owner-

---

* See 1 Parsons on Contracts, 37, and authorities there cited, particularly Bailey v. Bussing, 28 Connecticut, 455.

ship of the property, the judgment creditors gave him a bond to save him harmless, and the complainant, Henry Leopold, became the surety of Selz & Cohen in that bond. Indemnified against loss, the sheriff, by the direction of John M. Huntington, attorney of Selz & Cohen, seized and sold the goods and chattels, as the property of the junior member of the firm of Sternberg & Isidor, the judgment debtors.

The property sold was subsequently claimed by Levi J. Unna, and he brought trespass in the Circuit Court against those who signed the bond of indemnity, and the attorney who gave the directions to make the sale.

Defendants appeared at the October term of the court, 1858, and went to trial, but the jury being unable to agree, they were discharged, and the case was continued. Before the next trial the plaintiff agreed with the complainants in this suit, that if they would make no further defence in that action, he, the plaintiff, would save them harmless from all loss or damage, and that no part of the judgment he might recover in the suit should be collected of them or be levied on their property. Complainants admit that they accepted the proposition, and that their attorney withdrew from the defence, and it appears that the plaintiff, on the fifth day of March, 1859, recovered judgment in the suit against all the defendants in the sum of six thousand three hundred and seven dollars and eighty-nine cents, and costs of suit.

Four of the defendants, to wit, William Ross, John H. Ross, Leonard B. Shearer, and William W. Strong, sued out a writ of error to this court. Pending the writ of error, Daniel L. Shearer and William Clark purchased the judgment for the sum of six thousand five hundred and forty-six dollars and twenty-eight cents, and took an assignment of the same from the judgment creditor. Covenants of the assignor were in substance and effect that the judgment was wholly unsatisfied, and that he had done no act to impair, in any way or manner, its force and effect, and he added the unusual stipulation that he intended to make the representations so full and explicit, that if false they would bring him

within certain provisions of the Crimes' Acts passed by the State legislature.

By the advice of counsel the writ of error was not prosecuted, and for that reason was dismissed under the rules of this court. Danger from the writ of error being removed, the assignees of the judgment caused execution to be issued on the same, and placed the execution in the hands of the marshal for the purpose of having the money collected. Pursuant to the commands of the writ, the marshal proceeded to levy the same on the property of Kohn & Brother, when they proposed a compromise as a means of saving their property from sacrifice. Substance of the proposition was, that they would pay one-fourth of the amount, and that Ross & Company, and Shearer, Strong & Paine, should each pay one-fourth, and that the marshal should levy the remaining one-fourth on certain real estate formerly belonging to Henry Leopold, who was the surety of Selz & Cohen. They accepted the proposition, and the payments were made as proposed.

Levy was accordingly made by the marshal on that real estate to satisfy the balance of the execution which belonged to Selz & Cohen, or their surety to pay, but before the sale was completed the complainants filed their bill of complaint.

In the bill they set up the suit in trespass, the agreement made by them with the plaintiff, their withdrawal from the defence, the recovery of the judgment by the plaintiff, and the assignment of the judgment, and charge that Ross & Co. and Shearer and Strong paid the whole amount of the judgment, and that the assignment was not *bona fide*, but that it was made with intent to enforce contribution against the complainants. Prayer of the bill of complaint was, that the other judgment defendants, and the plaintiff in the trespass suit, and the assignees of the judgment, might be made parties, and that they might be enjoined from completing the sale of the real estate, and from all proceedings to collect the judgment.

Answers were filed by William Clark, William M. Ross, John H. Ross, and William Strong, denying the entire equity

of the bill of complaint, whereupon the complainants moved the court for an injunction to stay the sale, which was denied by the court, and the marshal sold the premises to Henry A. Kohn, and gave him the proper certificate of sale. Sub-sequently the complainants filed a supplemental bill, in which they alleged that these respondents had agreed that the lot in question should be sold, that Henry A. Kohn should bid it off for the purpose of compelling the complainants to pay their proportion of the judgment, and prayed that the pur-chaser might be enjoined from receiving any deed of the lot, or from interfering in any manner with the premises. State-ment of the original bill of complaint was, that the premises formerly belonged to the complainant, Henry Leopold, and his copartner in business, and that the owners thereof be-came embarrassed, and made an assignment of all their property and effects for the benefit of their creditors, and that the assignee sold and conveyed the premises to a third person for the sum of three thousand dollars.

Suppose the allegations of the bill of complaint are true, then it is clear that the decision of the Circuit Court was correct, as the complainants have no title or interest in the land sold by the marshal, and described in the certificate which he gave to the purchaser. They, under such a state of the case, have no such standing in the pleadings as will enable them to ask the interposition of a court of equity to enjoin the respondents or any other parties, as their own allegations show that they have no title in the premises.

Interposition of a court of equity cannot be successfully invoked in a case like the present unless the party asking relief is able to show that he has a legal or equitable right or title in the subject-matter of the controversy. But the want of title in the complainants was not the ground as-sumed by the Circuit Court; and inasmuch as the marshal sold the land as the property of Leopold, we are inclined to examine some of the other issues between the parties as dis-closed in the pleadings.

Principal charge in the bill of complaint is, that the assign-ment of the judgment was procured as the means to compel

the complainants to pay their proper proportion of the amount therein recovered. Proofs in the suit do not establish that proposition, but if they did it would not benefit the complainants in this case, because the judgment had been recovered against the complainants as well as the respondents, and the former, as well as the latter, were liable for the whole amount recovered. Pending the suit in which the judgment was recovered, it is true the plaintiff had agreed that, if these complainants would make no further defence to his action of trespass, his judgment, in case he prevailed, should be levied on the property of the other defendants, and the record shows that they accepted that secret proposition, and gave their associates no aid in conducting the defence at the second trial. But they were not discharged from their joint liability, and the verdict and judgment were against them as well as against the other parties. Conceded intention of the plaintiff was to collect his whole claim, but he was willing to agree secretly with the complainants to collect the whole amount of the other parties to facilitate his recovery in the suit. Theory of the suit was, that the defendants were joint trespassers, and if such was the fact the plaintiff must have known that he could not release one without discharging all the rest, who were jointly liable for the same wrongful act.[*]

Present complainants were defendants in that judgment, and became liable with the other defendants to pay the whole amount. Prior to the rendition of the judgment any agreement between the plaintiff in the suit and these complainants, such as is now alleged in the bill of complaint, would, if construed to be a discharge, have been a good defence for all the other joint wrongdoers. Such a secret agreement entered into between a plaintiff and a part of the defendants in a suit is inequitable, as tending to promote injustice both as between the plaintiff and the other defendants, and as be-

---

[*] Dufresne v. Hutchinson, 3 Taunton, 117; Ruble v. Turner, 2 Henning & Munford, 38; Strang v. Holmes, 7 Cowen, 224; 2 Greenleaf on Evidence, § 30.

tween those who were jointly liable for an error committed in an attempt to enforce their legal rights.

Parties are not only bound to act fairly in their dealings with each other, but they are not to expect the aid of a court of equity to enforce an agreement made with the intent that it shall operate as a fraud upon the private rights and interests of third persons.*

Better opinion from the evidence is, that the purchase of the judgment by the assignees was made in good faith, and that they had no knowledge of the secret agreement between the judgment creditor and the complainants. Grant that the fact is so, still the complainants contend that the assignees of the judgment acquired no greater rights by the assignment than the assignor possessed at the time the assignment was made. General rule undoubtedly is, that the assignee of a judgment takes it subject to all defences which existed against it in the hands of the assignors at the time the instrument of assignment was executed.†

When the assignees took the judgment in this case the complainants were legally liable, with the other defendants, and they were without any defence against the same, other than what arises from the agreement made by them in the trespass suit. Inequitable as that agreement was, it constituted no legal obstacle to the purchase of the judgment, and cannot be made the foundation for relief in this case. Payment of one-fourth of the judgment, as between the defendants in that suit, belonged to the complainants, and they having failed to pay their just proportion of the same, cannot complain that the assignees of the judgment have seen fit to levy that proportion of the same upon their property. Equal contribution to discharge a joint liability is not inequitable, even as between wrongdoers, although the law will not, in general, support an action to enforce it where the payments have been unequal.‡ Where the liability is

---

* 1 Story's Equity Jurisprudence, § 333.

† *Himes v. Burnitz,* 8 Watts, 39; *Chamberlin v. Day,* 3 Cowen, 353.

‡ *Merryweather v. Nixan,* 8 Term, 186; *Bailey v. Bussing,* 28 Connecticut, 455.

joint equal contribution is just, and it would afford the complainants no ground of relief if it appeared that the arrangement with the marshal was such as is alleged in the bill of complaint. Having collected three-fourths of the amount of the other defendants, it was quite right that he should, if possible, levy the balance so as to effect equal justice between the parties.

DECREE AFFIRMED WITH COSTS.