MAXWELL, SAULSPAW & Co. *vs.* LOUISVILLE & N. R. R. Co. & others.

October Term, 1872.

CONTRIBUTION AMONG TORT FEASORS.—Equal contribution among tort feasors is not inequitable, and, although the law may not support an action to enforce contribution where the payments have been unequal, neither will equity lend its aid to prevent the execution of a legal arrangement which secures equality of contribution.

SAME.—Where a joint judgment has been recovered by the party injured, against the employer and employee for a tort committed by the latter, and where the former was held liable only because of his relation to the latter, the employer may sustain an action against the employee for so much of the judgment as he may be compelled to pay.

CASE IN JUDGMENT.—Complainants entered into a contract with the defendant railroad companies to build the stone piers for a bridge over the Cumberland river, and, in doing the work, stretched a rope across the river by which the chimneys of a steamboat were knocked down, and for the damages occasioned by which the owners of the boat recovered a joint judgment against complainants and said defendants. The L. & N. R. Co. paid the judgment, causing the same to be assigned to its president in his individual name, and execution to be issued thereon, which was levied on complainants' property. Upon bill filed by the latter to enjoin the execution as extinguished, and by the company to recover the amount of the judgment. *Held:*

1. That equity would not, under the circumstances, deprive the company of any legal advantage acquired by the assignment of the judgment.
2. The company is entitled, on the cross-bill, to recover from the complainants any money paid by it in satisfaction of the judgment, and this though one of the complainants was, by clerical misprision, not named in the judgment.

*J. C. Gaut & W. B. Reese*, for complainants.
*Rice & Thompson*, for defendants.

THE CHANCELLOR.—The complainants, a firm composed of A. L. Maxwell, George W. Saulspaw & Thomas H. Calloway, became the contractors, under written contracts, with the L. & N. R. R. Co. and the Edgefield & Ky. R. R. Co., to execute and

complete the masonry for the piers and abutments of the railroad bridge across the Cumberland river at Nashville. In the progress of this work, it became necessary to erect a derrick on one of the piers in the river, and, to steady this derrick, ropes were stretched from it to each bank of the river, with one of which ropes the chimneys of a steamboat, on its way to Nashville, came in contact, whereby the chimneys were thrown down and other damage occasioned. On the 13th of April, 1857, James Johnson and others, owners of said steamboat, brought an action on the case, in the Circuit Court of Davidson County, against complainants and both of said railroad companies, for the recovery of the damages thus sustained, and on the 5th of October, 1860, recovered a verdict against all of the defendants for $4,500, but the judgment, properly entered as to other parties, by clerical misprision, no doubt, was not rendered against Thos. H. Calloway. *Fi fa* issued on this judgment, and was levied on a house and lot, the property of the L. & N. R. R. Co. This levy was afterwards, about March, 1861, released by the plaintiffs, and the judgment assigned to James Guthrie, then president of the L. & N. R. R. Co., in consideration of his two notes at six and twelve months, with personal security, for the amount of the judgment and interest. The money paid by Guthrie for the judgment, was subsequently reimbursed to him by the L. & N. R. R. Co., the arrangement having been really made for the benefit of that company, in order to keep the judgment alive, and to enable the L. & N. R. R. Co., through Guthrie, as their trustee, to control the same and the collection thereof. On the 22d of March, 1867, complainants filed their original bill in this cause, partly for an account of the work done by them under the contracts as .aforesaid, and partly to enjoin the sale of property levied upon by execution issued upon said judgment, the injunction being claimed upon the ground that the judgment was, in effect, paid and satisfied by the L. & N. R. R. Co., and therefore extinguished. The Edgefield & Ky. R. R. Co., in its answer, insists that the com-

plainants have been paid for their work, and refer to and adopt the answer of Guthrie in the matter of the judgment. The L. & N. R. R. Co. and James Guthrie each file separate answers, in which they claim that complainants have been paid in full for their work, and admit the facts in relation to the judgment to be as above set forth. Each answer is also filed as a cross-bill, to hold the complainants liable for the damage occasioned to the steamboat as aforesaid, upon the ground that they are bound " on their contracts, expressly made to this end, and also by their relation as master and servant, or principal and agent, to make good any loss respondent has, or may suffer in this behalf." To these cross-bills the complainants are made defendants, and to Guthrie's cross-bill, James H. Allen and A. H. Hicks, sureties of complainants on the injunction bond executed at the filing of the original bill, are also made defendants.

The original complainants seem to have moved, in the first instance, that the cross-bills be dismissed for want of equity on their face, which motion was overruled by the court, but with " leave to complainants to avail themselves of the same in such manner as law allows in their answers to said cross-bills." Demurrers are also on file among the papers, insisting upon the same grounds taken in the motion to dismiss. Whether any action has been taken upon these demurrers, the papers handed me do not show.

On the 15th of April, 1868, all the defendants to the cross-bill file a joint answer, wherein they insist severally upon the matters of demurrer to said cross-bills.

There being no question as to the jurisdiction of the court upon the matters of account of the original bill, a reference was, by consent of parties, at the May term, 1868, made to the clerk and master to take and state an account between complainants and the companies. The only evidence introduced upon this reference, were the final estimates of the work as made by the companies' engineer, and the account as made out by Maxwell, Saulspaw & Co., and the deposition of A. L. Maxwell, the parties agreeing in writing that

" the account and explanation of Mr. Maxwell shall be filed as evidence," exception to the witness on the score of interest being waived. The clerk takes this account as the basis of his report, and finds a balance due Maxwell, Saulspaw & Co., of $2,324.31. The defendants except to this report.

By consent of parties, the bill of exceptions in the action at law by the steamboat owners for damages, is filed as evidence, the testimony of the witnesses to be read as if taken by deposition in this case.

The first question raised by the record, is whether the complainants are entitled to a perpetual injunction against the judgment at law in favor of Johnson and others. It is urged in argument, by the complainants' counsel, that the assignment of the judgment having been made by the attorney of the plaintiffs at law, is void, an attorney having no power to make an assignment of his client's judgment. This argument is based upon the entry on the execution docket, which is in these words : " This judgment has been assigned by plaintiffs to James Guthrie for value received by them of him, and the levy heretofore made on the lot of the Louisville Railroad Company, is released. John Reid, attorney." The argument, takes for granted that this is the assignment of the judgment to Guthrie, whereas it is obviously only a memorandum showing that such an assignment was made. Besides, no issue is made in the bill upon the validity of the assignment, nor are the defendants required to produce or prove the same.

A much more serious question is, whether the L. & N. R. R. Co. could keep the judgment alive by the plan resorted to. There is no doubt about the facts. Guthrie, in his answer, which is referred to and adopted by his co-defendants, admits that the money was eventually paid by the L. & N. R. R. Co., and that the purchase and assignment to him were resorted to for the express purpose of keeping the judgment alive, and to enable the L. & N. R. R. Co. to enforce its collection out of Maxwell, Saulspaw & Co. The

equitable ground upon which the defendants rely to sustain the assignment, or, at any rate, to resist the complainants' bill, is that the complainants are primarily liable for the recovery in the action at law, the damages, for which the recovery was had, having been occasioned by their negligence in doing the work on the piers under the contracts as aforesaid, that the railroad companies were only held liable in their character of principals, and that complainants are bound to indemnify them against the injury thus sustained. They insist that they are entitled to accomplish, by the mode adopted, what they would unquestionably have the right to do by suit, and that this court will not deprive them of the legal advantage thus obtained.

It was decided in *Gunn & Boyd* v. *Tannehill*, 2 Yer. 544, that where a judgment, obtained against a principal and his surety before a justice of the peace, was stayed by the debtor alone, the surety might, upon payment of the judgment without any contract for or actual assignment, have execution, after the stay was out, against all parties, but to be made out of the principal and stayor. So held at law upon *certiorari* and motion to quash. Subsequently, in *Hardeman* v. *Burge*, 10 Yer. 202, upon bill in chancery, to set aside a sale upon the ground that it had been made under execution, after the judgment had been extinguished by payment, and it appeared that the judgment had been paid by the son of the judgment-debtor and another, and an assignment taken to the son for the benefit of the father, it was held that a judgment may be assigned so as not to extinguish it, but so as to transfer the money for which it is rendered to the assignee, and to authorize him to run an execution, to enforce satisfaction of it, in the name of the assignor. It was also held that whether a payment to the plaintiff of the money recovered in a judgment will be an extinguishment or sale of the judgment, is a question of fact depending upon the intention of the parties. These decisions are recognized, and referred to, under a general reference to 2 Meigs Dig., 990, 993, by the learned judge who

delivers the opinion of the court in *Topp* v. *Br. Bk. of Ala.*, 2 Swan, 184, and who adds that, even at law, the legal consequences of extinguishment may be avoided.   The decision itself turned upon the fact that the money was paid in discharge of the judgment against the payer, "and not as a purchaser or assignee of the judgment" in controversy.   It was a recognition of the well-established principle, that a judgment once paid is extinguished.   And this is all that is decided, so far as this point is concerned, in *Anderson* v. *Saylors*, 3 Head. 551 ; *Baldwin & Campbell* v. *Merrill*, 8 Hum. 132 ; *Hammett* v. *Wyman*, 9 Mass. 138 ; *Brackett* v. *Winslow*, 17 Mass. 158, in all of which cases the judgments were paid without any contract for, or actual assignment. In *Horok* v. *Kimball*, 2 Blackf. 309, it was held that the debtor in a judgment might pay the amount called for in said judgment to the creditor, and cause a valid assignment to be made to another creditor, and that the transaction did not discharge the judgment.   In *Cuyler* v. *Ensworth*, 6 Paige, 32, it was held, that where judgment was recovered against four sureties on a joint bond, and three of them paid the whole judgment without any contract for or actual assignment thereof, the latter might file a bill in equity, upon the subsequent return of an execution *nulla bona* as to the one-fourth due from the other surety, to obtain satisfaction of his ratable proportion of the judgment, out of the equitable interest and choses in action of the co-surety, which could not be reached by the execution at law.   "The court," says Ch. Walworth, "looks to the substantial right of parties without reference to mere matters of form.   It even revives a judgment at law which has been actually discharged on the record, for the purpose of giving effect to the equitable rights of a surety to subrogation ; as was done in *Burrow* v. *McWhann*, 1 Des. 409.   In this case, therefore, as the complainants were entitled to the benefit of the judgment in equity to compel the defendant to refund to them his contributory portion of the debt, if the execution had been taken out for their benefit and levied upon his

property to that extent, after the co-sureties had paid the whole amount of the judgment, this court, if necessary, would have restrained the defendant, by injunction, from contesting the validity of the execution at law." If, then, there were nothing else in this branch of the case, and the evidence satisfied me that the complainants were primarily, and the defendants, the railroad companies, only secondarily liable for the recovery had at law, I should not deprive the companies of any legal advantage they may have acquired by the assignment of the judgment at law to James Guthrie, but would dismiss the original bill, and remit the parties to their legal rights.

It is urged, however, that the recovery at law was in tort, and that there can be no contribution among wrong-doers, and the learned counsel refer to *Anderson* v. *Saylors*, 3 Head, 551; *Rhea* v. *White*, Id. 121; *Hill. on Torts*, 177. And, certainly, these authorities do lay down the general rule thus broadly. What is said by the learned judge, in *Anderson* v. *Saylors*, on this point, was, however, a mere *dictum*, for no question of contribution could be raised in that case, the judgment having been paid without any contract to keep it alive. But it may be good law, nevertheless, so far as the legal forum is concerned. The case of *Rhea* v. *White*, was a bill for contribution, filed by one of the distributees of Matthew Rhea, deceased, against the other distributees, to compel these latter to bear their proportion of a recovery had in an action of trover at law, for negroes divided among said distributees as part of the intestate's estate. The learned judge who delivers the opinion of the court, does say—page 125—that he can find no authority for contribution "where the recovery is for a tort, as contradistinguished from a contract." But he limits the actual decision, to what, in his own language, he "may safely say," namely: "That a recovery against a party in trover, for a *joint wrong*, *prima facie*, at least, if not conclusively, so places him in *pari delicto* as that he can have no contribution, unless he aver and prove his innocence of the wrong."

The rule, thus qualified, is unexceptionable; for, even in the case of a recovery for a *joint wrong*, it gives to any one of the defendants a right to contribution, who, in his bill for the purpose, can aver and prove innocence of the wrong; and, in the case of a recovery against several not for a joint wrong, but for the separate wrong of one, for whom the others are bound by reason of their relation, as a master for the act of his servant, it leaves the question of contribution open. It would be monstrous, if the law were otherwise. for the reason of the general rule is, as stated by Judge Wright in *Rhea* v. *White*, that persons may be intimidated from committing the wrong by the danger of each being made responsible for all the consequences. And this reason can have no possible application to a case where one of the parties is innocent of wrong, and only made liable by the circumstances of his connection with the property, or relation to the parties. Nay, I fully agree with Mr. Justice Clifford in his opinion, expressed in *Selz* v. *Unna*, 6 Wall. 327, 336, that equal contribution among *tort-feasors* is not inequitable, and, although the law will not support an action to enforce contribution where the payments have been unequal, neither will a court of equity lend its aid to prevent the execution of an arrangement which secures equality of contribution. And see *Adamson* v. *Jarvis*, 4 Bing. 66, and *Jones, Ex parte*, 1 Molloy, 63, 71. I see no reason, therefore, even in this view of the law, if the facts are as before suggested, for actively interposing to deprive the defendants of a legal advantage, if they have acquired any, which tends to throw the burden on those primarily liable.

Is this a case of contribution at all among joint *tort-feasors*, or a case where, although the recovery is joint, the defendants in the judgment have been held liable, the complainants as the parties actually doing the wrong, and the railroad companies simply because in law responsible for the acts of their employees? The companies insist that the injury done was occasioned by the negligent act of the contractors, without any knowledge or participation on their

part, and that the complainants are bound to indemnify them, by the positive provisions of the contract, as well as by reason of the relation of the parties as master and servant. On the other hand, the complainants insist that the work was, by the terms of the contract, under the supervision of the officers of the companies, and, therefore, the act of the employees of the contractors in stretching the guy, was the act of the companies. They further insist that the contracts specify what damages the contractors are bound to make good to the companies, and that the damage in question was not among those provided for. Singularly enough, most of the argument in this connection on both sides, turns upon a clause of the contracts upon which both parties rely. This clause reads as follows :

"The blasting of rock *in the progress of the work*, shall be at the risk of the contractors, and all damages occasioned thereby, or any injury done by the contractors or their workmen, to the crops, fences or other property of the adjoining land owners in any other way, shall be paid by the contractors, and the railroad company saved wholly harmless therefrom by the contractors."

It is argued by the complainants that this clause limits the liability of the contractors to the damages specially enumerated, and by the companies that, by the tenor and scope of the language used, the contractors are bound to save the companies harmless from all damages done in the progress of the work. In the construction of the language of this clause, I think the argument is with the complainants. But I am unable to concur with either side in the conclusions attempted to be drawn from the words used. Upon reference to the contracts themselves, it will be seen that they are printed forms, intended to cover all classes of contracts necessary to be made in the progress of building a railroad, and, among other kinds of work enumerated is "rock excavation," and the clause quoted was intended to cover damages by contractors for that kind of work; for it confines the damages to those occasioned by the blasting of rock in the *progress of the work*,

that is, work under the contract.  The contracts with the complainants were for masonry, the erection of piers and abutments, and prescribed the character of such masonry. But there is no contract for excavating rock or quarrying rock.  It is true the complainants might find it necessary themselves, in order to comply with their contract, to quarry the stone, but there is no contract to this effect with the companies.  If they did quarry stone, and this nowhere appears in the record, the companies had nothing to do with it, and the complainants could not, in any sense, be considered as their servants in that regard, nor could the companies be held responsible, by reason of these contracts, for any damages done by the complainants in quarrying.  The clause, in other words, has no force and effect any way in these contracts.  But the contracts do contain a provision having some bearing on this case, and that is, that the contractors "shall give personal attention to the execution of all parts of the work contracted for."  This shows that the parties contemplated that the details of the work should be under the supervision and control of the contractors, the engineers of the company having no control except to see that the stipulations of the contract were complied with.  The proof shows that one of the contractors was present, and giving his personal attention to the execution of the work contracted for, when the accident happened to the steamboat.  I am clearly of opinion that the act which was done, was the act of the contractors, and not that of the companies, and that the contractors are primarily liable for the damages occasioned, not by the terms of the contract, but by the relation of the parties, and that the companies could only have been held liable as the principal or employers, and not for any actual participation in the wrong.  In that view, what is to prevent the companies from having their remedy over against the complainants, without any reference to the doctrine of contribution?

"In an action," says Judge Wright in *Horne* v. *M. & O. R. R.*, 1 Cold. 76, "against the principal for damages

2

occasioned by the neglect or misconduct of his agent or servant, the latter is not a competent witness for the defendant without a release; for he is, in general, liable over to his master or employer, in a subsequent action to refund the amount of damages which the latter may have paid. The principle of this rule of action applies to the relation of master and servant, or employer and agent, whenever that relation, in its broadest sense, may be found to exist; as, for example, to the case of a pilot, in an action against the captain and owners of a vessel for mismanagement while the pilot was in charge; or the guard of a coach, implicated in the like mismanagement, in an action against the proprietor. *The doctrine is applicable to railway companies* and to corporations in general." The learned Judge, among other authorities, cites 1 Gr. Ev. sec. 394. Upon reference to this section, we not only find it directly in point, but we find the additional rule laid down, that the judgment against the principal in such cases, is always evidence to show the amount of damages recovered against the employer, *and is evidence of all the facts found* " if he, the agent, has been duly and seasonably informed of the pendency of the suit, and required to defend it." *A fortiori*, I take it, if he is sued with the principal, and defends the action, but recovery is had against both. To say, that because there was a joint recovery in tort in such case against both principal and agent, the principal could not make the agent primarily liable for the recovery in any legal mode, would be to make the rights of parties dependent upon the form of action which a third party might see proper to adopt, and would do violence to all our ideas of justice.

If, therefore, the railroad companies have, without any actual participation in the wrong, been made liable jointly with complainants in an action of tort for the misfeasance of the latter, I can see no reason why the companies might not, in any manner known to the law, compel the complainants to pay that judgment, where the judgment would, in a separate action, be conclusive evidence of the extent of the

damages. Certainly a court of chancery would not inter-pose in such case to deprive the companies of any legal advantage, unless the bill disclosed some positive equity. Just as Judge Wright suggests, in *Rhea* v. *White*, that the complainant could have no right to contribution for a recovery in tort, unless he averred and proved ignorance of the wrong; so, here, the complainants can have no claim to the aid of a court of equity to deprive their adversary of a legal advantage, unless they averred and proved that they were guiltless of any participation in the wrong for which the judgment was recovered. But the bill, far from containing any such averment, admits that the action was brought, and recovery had "by reason of the said companies and complainants having placed across the Cumberland river a certain rope which caused" the damage. And the proof shows that the stretching of this rope across the river was the exclusive act of the complainants. The gravamen of the bill is not that complainants are innocent, but that' the judgment has been extinguished. In this view of the case, it is obvious that the complainants are not entitled to the interposition of this court by its injunctive process.

The defendants, not satisfied with resisting complainants' bill for relief on this branch of the case, have filed their answers as cross-bills. The object of the cross-bills is to charge the complainants with the recovery in the judgment at law. The effect of the order of the court upon the motion to dismiss these cross-bills, was, I think, to give the complainants the benefit of the matters of demurrer in their answer, upon which, accordingly, they severally rely. No effort has been made to sustain Guthrie's cross-bill as to Allen and Hicks, nor can I see how any bill can be filed against them until their liability has accrued, and the cross-bill must be dismissed as to them. If the cross-bill of James Guthrie is to be considered as an independent bill the demurrer to that bill would be also well taken. In a court of chancery, the real parties in interest must be before the court, and James Guthrie alone could, upon his own state-

ments, sustain no bill in relation to the judgment at law, nor, of course, to the liability of the complainants to indemnify the companies against loss by reason of their acts as contractors. It would have been better, and more in conformity with the rules of equity, if the L. & N. R. R. Co., and Guthrie, instead of each filing his answer as a cross-bill, had joined in a cross-bill for the same matters. The court, however, looks to substance, not form, and will consider the cross-bills as, in effect, one bill, and overrule the demurrer. It may be added, that if the demurrer had been sustained instead of being overruled, the result would have been precisely the same; for the cross-bill of the L. & N. R. R. Co. would be sufficient, itself, to sustain the relief sought by both cross-bills.

There is nothing in the objection that the relief sought in the cross-bills is inconsistent with the defenses made in the answers. The latter insist that the assignment of the judgment was valid, which may well be, and the defendants entitled to the benefits thereof, and yet they be entitled to positive relief by a decree for the damages sustained by them by the wrongful act of the complainants. But it is certain that they could only have one satisfaction.

The remaining ground of demurrer is, that the claim of the defendants, sounding in damages, is only enforceable at law. If the litigation involved the ascertainment of the fact whether there had been any wrongful act, as between complainants and the companies, committed at all, and the extent of the damages, the objection would be very serious. But, we have already seen that the judgment at law, recovered against both principal and agent, is conclusive evidence of these facts; nothing remains for this court but to determine whether the complainants are primarily liable for the recovery. This is a matter of equitable, not legal cognizance, and the demurrer must be overruled on this point also.

In the foregoing remarks, I have disposed of all the points made in the answer to the cross-bill, or in argument, to the relief sought by the cross-bills, except, perhaps, two. It is

urged that the contracts provide a mode of settling all disputes between the parties, and the companies have no right to select another mode. The reply to this is, that the stipulation is, to refer to the chief engineer any disputes "as to the meaning or execution of the provisions of the contract," not any question of liability of the contractors to the companies for damages done to third persons by the manner in which the work is conducted. The other objection, that the companies have waived their right to damages by accepting the work is equally untenable. They were bound to accept the work, when completed according to contract, whether third persons had been aggrieved or damaged during the progress of the work, or not, and without reference to the question whether the contractors or the companies were primarily liable therefor.

I am of opinion, upon the cross-bills, that the companies are entitled to charge the complainants, including Thos. H. Calloway, whose name was, by mistake, left out of the judgment at law, with the amount of such judgment, as the damages, conclusively ascertained in a suit to which the complainants were parties, sustained by an act of the complainants as contractors, and against loss from which they are bound to save the companies harmless.

The original bill claims that no final settlement was ever had of the work done under the contracts, and calls for an account. The defendants do not claim that a final settlement was ever in fact made, but insist that complainants were fully paid. They offer no proof, and the only evidence on this subject in the record, is the deposition of Maxwell, with the accompanying account, which, it is agreed, may be filed as evidence, all exceptions to the competency of the witness being waived. I cannot say that the statements of the witness are as clear and satisfactory as they might be, but, in the absence of all other testimony, or even cross-examination, I do not see how the clerk and master could do otherwise than accept them as true. The exceptions to the clerk's report, will, therefore, be disallowed, and the

report confirmed, except so much of it as refers to the judgment at law. A decree will be rendered in favor of the complainants and against the railroad companies for the amount so found by the clerk and master, with interest, and the original bill will be dismissed so far as it seeks a perpetual injunction against the judgment at law. A decree will also be rendered in favor of the railroad companies against the complainants for the amount of the judgment at law, with interest and costs, but to be set off *pro-tanto* by the recovery of the balance of account as aforesaid. The companies will, of course, be entitled to only one satisfaction for the residue ascertained to be due them after the recovery on the account is set off as aforesaid, and the judgment at law will be extinguished to the extent of such recovery. The complainants will pay one-half of the costs of this court, and the railroad companies the other half jointly.

NOTE.—This case was affirmed on appeal, the court referring to the opinion of the Chancellor as rendering any further opinion unnecessary.