Peelle, J.,
delivered the opinion of the court:
The claimant, a corporation organized under the laws of the State of California, brings this action to recover, on the theory of an implied contract, damages alleged and found to have been caused to it by being dispossessed of certain lands and improvements thereon, on the island of Afognak, in the Territory of Alaska, by reason of the proclamation of the President, of December 24, 1892, declaring said island of Afognak, including the land so claimed by the claimant, reserved for public purposes.
By the act of May 17, 1884 (23 Stat. L., 24), being an act to provide for “ a civil government for Alaska,” it was provided, by the first proviso of section 8, “ That the Indians or other persons in said district shall not be disturbed in the possession of any lands actually in their use or occupation or now claimed by them, but the terms under which such persons may acquire title to such lands are reserved for future legislation by Congress.”
Early in the spring of the jrear 1889 the claimant purchased and caused to be shipped to said island of Afognak materials for the erection of a canning establishment for the purpose of canning salmon, and for that purpose, and without authority or license from the United States other than said act of 1884, took possession of a site on said island containing 159.52 acres of land, and after clearing away the trees thereon erected buildings for the purpose aforesaid at a cost of about $45,000.
Thereafter, and while the claimant was in the possession of said lands and improvements and engaged in the canning-business as aforesaid, Congress passed the act of March 3, 1891 (26 Stat. L., 1095-1100), being “An act to repeal timber-culture laws, and for other purposes,” sections 12 and 13 of ivhich read:
“ Sec. 12. That any citizen of the United States twenty-one years of age, and any association of such citizens, and any incorporation incorporated under the laws of the United States or of any State or Territory in the United States now authorized by law to hold lands in the Territories now or hereafter in the possession of and.occupying public lands in *477 Alaska for the purpose of trade or manufactures, may purchase not exceeding one hundred and sixty acres, to be taken as near as practicable in a square form, of such land at two dollars and fifty cents per acre: Provided, That in case more than one person, association, or corporation shall claim the same tract of land ihe person, association, or corporation having the prior claim by reason of possession and continued occupation shall be entitled to purchase the same; but the entry of no person, association, or corporation shall include improvements made by or in possession of another prior to the passage of this act.
“ Sec. 13. That it shall be the duty of any person, association, or corporation entitled to purchase land under this act to make an application to the United States marshal, ex ojfieio surveyor-general of Alaska, for an estimate of the cost of making a survey of the lands occupied by such person, association,.or corporation, and the cost of the clerical work necessary to be done in the office of the said United States marshal, ex offi,cio surveyor-general; and on the receipt of such estimate from the United States marshal, ex officio surveyor-general, the said person, association, or corporation shall deposit the amount in the United States depository, as is required by section numbered twenty-four hundred and one, [Revised Statutes, relating to deposits for surveys.
“ That on the receipt by the United States marshal, ex officio surveyor-general, of the said certificates of deposit, he shall employ a competent person to make such survey, under such rules and regulations as may be adopted by the Secretary of the Interior, who shall make his return of his field notes and maps to the office of the said United States marshal, ex officio surveyor-general; and the said United States marshal, ex officio surveyor-general, shall cause the said field notes and plats of such survey to be examined, and if correct approve the same, and shall transmit certified copies of such maps and plats to the office of the Commissioner of the General Land Office.
“ That when said notes and plats of said survey shall have been approved by the said Commissioner of the General Land Office, he shall notify such person, association, or corporation, who shall then, within six months after such notice, pay said United States marshal, ex officio surveyor-general, for such land, and patent shall issue for the same.”
On April 1, 1892, the claimant made application, as provided by said section 13, and Revised Statutes, section 2401, to the United States marshal and ex officio surveyor-general of Alaska for a survey of the tract so entered upon by it under *478 the provisions of said act of March 3, 1891; and under the direction of said marshal deposited in the subtreasury at San Francisco $433.80, being the estimated cost of such survey. Thereafter said marshal and ex officio surveyor-general caused the survey of the ground so entered upon to be made, which he numbered 31, approved the same and forwarded it to the Commissioner of the General Land Office. But before the Commissioner had acted thereon the President issued a proclamation declaring the whole island of Afognak, including the site so entered upon by the claimant, reserved for fish-culture stations, and warning all persons to depart therefrom. Pursuant to that proclamation the agents of the United States notified the claimant’s officers thereof and ordered them to depart, which they did, leaving the improvements they had erected thereon, which have since been cared for by a watchman, though the property, for want of use, has deteriorated and been materially reduced in value, but to what extent by use does not appear.
January 15, 1895, the Connnisioner of the General Land Office, considering the survey so made and transmitted to him for his action, declined to approve the same, assigning as his reasons therefor that the tract embraced in the survey was not in square form, as required by the act of 1891, and for the further reason that “ the whole of Afognak Island, its bays, rocks, and territorial waters, including the Sea Lion Rocks and Sea Otter Island, was made a public reservation by the President’s proclamation, dated December 24,1892.” For the reasons stated the survey Avas rejected and the marshal AA7as directed to notify the parties in interest of their right to appeal within sixty days, but no appeal appears to have been taken by the claimant, nor does any application appear to have been made for the return of the money so deposited.
During the period of the claimant’s occupancy and conduct of its business on the site in the years 1889, 1890, 1891, and 1892 a business AA7as built up from which the claimant derived a large profit. By reason of having to remove from the lands the claimant has been greatly damaged. No improvements appear to have been made on said lands subsequent to March 3, 1891.
*479 The claimant’s contention is that by virtue of the act of 1884 a contract arose whereby the claimant was given permission to enter upon and occupy said lands, with the right to. purchase the same from the Government upon terms to be thereafter fixed by Congress, and that having complied with the terms of the act of 1891 it thereby became entitled to have said lands surveyed and a patent issued vesting in it the title to said lands, and that on failure so to do and dispossessing the claimant the Government is bound to respond in damages as for a breach of such contract.
The defendant’s contention is that the President had the authority at any time before the issuance of the patent to withdraw the lands from sale and to declare the same reserved for public purposes, and that therefore, as such patent had not issued to the claimant, the title to said lands never vested in it, without which the claimant could not have been divested of any right from which an implied contract could arise to pay it for the improvements so made on said land,, or from any loss of profits arising from its business.
By the act of 1884 providing a civil government for Alaska, it was provided, in respect to those persons then in the actual use or occupation of any lands in said district or then claimed by them, that they should not be disturbed in their possession. Such possession had been acquired prior to the organization of such civil government, ■ and maybe prior to the cession of Alaska to the United States. It was. doubtless for these reasons that the provision was inserted in the act, but the terms under which such persons might acquire title to such lands were reserved to future legislation by the Congress.
When the claimant entered upon the lands and erected thereon buildings for the purpose of conducting its business, it did so without the authority or license of the United States — none being given by the act of 1884 — and was therefore a trespasser. Therefore, as the claimant was not, when that act was passed, in the actual use or occupation of the lands here in controversy, and was not then claiming the same, the act of 1884 has no application to it, and hence no rights can be claimed thereunder. We are, therefore, unable. *480 to concur in the construction given to that act by the District Court of Alaska in the case of Young v. Goldsteen (97 Fed. Rep., 303), holding that the act applied to those persons going upon the lands subsequent to the passage of the act.
But as the claimant was, in its own wrong, in the possession of the lands so entered upon when the act of March 3, 1891, was passed, the remaining question is, What rights, if any, did the claimant acquire under that act from which a contract can be implied to compensate it for losses sustained by reason of its enforced removal from the lands ?
The claimant being at the time of the passage of the act a corporation organized under the laws of California, was authorized to hold lands in the Territories, and being then in the possession of and occupying the lands in question for the purpose of trade or manufactures, was entitled to purchase not exceeding 160 acres, to be taken as near as practicable in a square form, of such lands at $2.50 an acre.
But was the claimant, as against the United States, entitled to have the survey approved by the Commissioner and a patent issued vesting in it the title to said lands after the President, in the exercise of his power, had issued his proclamation declaring the whole of the island upon which the land was situate reserved for public purposes? (Grissar v. McDowell, 6 Wall., 336; United States v. Payne, 8 Fed Rep., 833-888, and Wolcott v. Des Moines Co., 5 Wall., 681.)
Although prior to the passage of the act of 1891 the claimant had without authority entered upon the land in question and erected thereon buildings and machinery, it was, by reason of its possession and occupancy,'given the right to purchase not exceeding 160 acres of land for the purpose of trade or manufactures, upon the terms and conditions stated in the act. Such right, however, ivas no greater than that given by the act to those who might thereafter, for the purpose stated, be in the possession or occupancy of such lands. In this respect, therefore, the act of 1891 differs from the act of 1884. By the act of 1891 the claimant’s occupancy was recognized for the purpose of giving it the right to be preferred in the purchase of such lands if offered for sale, but as no patent was issued to the claimant the title to said lands never vested in it.
*481 In the Yosemite Valley case (15 Wall., 77-87) it was held, following the case of Frisbie v. Whitney, (9 Wall., 187-194) —
“that under the preemption laws mere occupation and improvement of any portion of the public .lands of the United States, with.a view to preemption, do not confer upon the settler any right in the land occupied, as against the United States, or impair in any respect the power of Congress to dispose of the land in any way it may deem proper, and that the power of regulation and disposition conferred upon Congress by the Constitution only ceases when all the preliminary acts prescribed by those laws for the acquisition of the title, including the payment of the price of the land, have been performed by the settler. When these prerequisites have been complied with the settler for the first time acquires a vested interest in the premises occupied by him, of which he can not be subsequently deprived. He is then entitled to a certificate of entry from the local land officers, and ultimately to a patent for the land from the United States. Until such payment and entry the acts of Congress give to the settler only a privilege of preemption in case the lands are offered for sale in the usual manner; that is, the privilege to purchase them in that event in preference to others. The United States by those acts enter into no contract with the settler and incur no obligation to anyone that the land occupied by him shall ever be put up for sale. They simply declare that in case any of their lands are thrown open for sale the privilege to purchase them in limited quantities at fixed prices shall be first given to parties who have settled upon and improved them. The legislation thus adopted for the benefit of settlers was not intended to deprive Congress of the power to make any other disposition of the lands before they are offered for sale or to appropriate them to any public use.”
The claimant contends, however, that inasmuch as it had erected valuable improvements upon the land in reliance upon its title and the good faith of the Government, and had paid the amount necessary to defray the expenses of the proceedings preliminary to making a final entry, that therefore the case comes more nearly within the rule announced in the case of Lytle v. State of Arkansas (9 How., 314-333), where it is said:
“ It is a well-established principle that where an individual in the prosecution of a right, does everything which the law *482 requires him to do, and he fails to attain his right by the misconduct or neglect of a public officer, the law will protect him. In this case the preemption right of Cloyes having been proved; and an offer to pay the money for the land claimed by him, under the act of 1830, nothing more could be done by him and nothing more could be required of him under'that act. And subsequently, when he paid the money to the receiver, under subsequent acts, the surveys being returned, he could do nothing more than to offer to enter the land, which the register would not permit him to do. This claim for preemption stands before us in a light not less favorable than it would if Cloyes or his representatives had been permitted by the land officers to do what in this respect was offered to be clone.”
But that case is quite different from the one before us. There the contest was between two claimants to lands open for sale. Here the contest is between the claimant and the Government respecting lands withdrawn from sale; and, having been withdrawn from sale, no right of preemption could attach, unless the proclamation of the President reserving the lands for public purposes was in violation of law.
The claimant doubtless by what it did acquired as against all but the United States the right to purchase the land if open to sale, or as was said in the Yosemite Valley case—
“ Such claim, it must be remembered, is only a claim to be preferred in the purchase of lands of the United States in limited quantities, at fixed prices, when the lands are offered for sale in the usual manner. When one has acquired this claim by complying with the conditions of the law for its acquisition he has a legal right to be thus preferred when the sale is made as against others asserting a similar right under the law which the court will enforce in proper cases. But the claim of preemption, as already said, can never arise when the law does not provide-for a sale of the property. Until thus’ sanctioned by the law the claim, as stated by the court in that case (Lytle v. State of Arkansas), has no existence as a substantive right.”
That the President had the authority by proclamation to withdraw the lands from sale and to set them apart for public purposes has been frequently decided, and therefore no neglect or fault can be attributed to him in the premises. In the case of Grissar v. McDowell (6 Wall., 363-381), in speak *483 ing of the authority of the President in this respect, the court said:
“From an early period in the history of the Government it has been the practice of the President to order, from time to time, as the exigencies of the public service required, parcels of land belonging to the United States to be reserved from sale and set apart for public uses. The authority' of the President in this respect is recognized in numerous acts of Congress. Thus, in the preemption act of May 29, 1830, it is provided that the right of preemption contemplated by the act shall not ‘ extend to any land which is reserved from sale by act of Congress, or by order of the President, or which may have been appropriated for any purpose whatever.’ ”
To the same effect also is the case of United States v. Payne (8 Fed. Rep., 883-888).
True, the right to purchase not exceeding 160 acres of land was given to the claimant by the act of 1891 on the condition, among others, that it was in the possession of and occupying such lands for the purpose of trade or manufactures, but such right can not be construed as depriving the Government of its superior right to withdraw such lands from sale and to set them apart for public purposes prior to the issuance of a patent therefor. Hence any improvements made on such lands before they were withdrawn from sale and reserved for public purposes was at the risk of those seeking to purchase. But with respect to the money deposited with the proper agent of the Government, set forth in finding ii, it is shown that the same was deposited on the faith of the act of 1891, and the Government having withdrawn the lands from sale and thereby denied to the claimant a patent vesting in it the title to such lands, the claimant is entitled, in lieu of the lands, to a return of the money so deposited, and for that amount judgment is ordered to be entered.
Weldon, J., did not sit in this case and took no part in the decision.