**GEORGE'S RADIO, Inc., v. CAPITAL TRANSIT CO.**

No. 7801.

United States Court of Appeals for the District of Columbia.

Argued Dec. 4, 1941.

Decided Feb. 2, 1942.

EDGERTON, Associate Justice, dissenting.

Mr. Lawrence Koenigsberger, of Washington, D. C., with whom Messrs. Morris Simon and Eugene Young, both of Washington, D. C., were on the brief, for appellant.

Mr. R. E. Lee Goff, of Washington, D. C., with whom Messrs. S. R. Bowen and H. W. Kelly, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and VINSON and EDGERTON, Associate Justices.

GRONER, C. J.

The question in this case is whether—in the District of Columbia—a right of contribution exists and should be declared between two persons liable for a tort in the absence, on the part of either, of any personal participation, personal culpability, fraud, or moral wrong.

The question arises under these circumstances. On May 27, 1940, David Oisboid brought an action against George's Radio, Inc., and Capital Transit Company to recover damages sustained by him as the result of a collision between his automobile, a bus of Transit Company, and an automobile operated by an agent of Radio Company. Judgment went in favor of Oisboid against both defendants. Subsequently, Oisboid demanded that Radio Company pay the judgment in full and refused to take action against Transit Company. Radio Company thereupon brought this suit in equity against Oisboid, Transit Company, and the United States Marshal. The complaint charged, inter alia, that neither Transit Company nor itself was an intentional or wilful wrongdoer or guilty of any personal participation or culpability in the collision and that, as to each, the judgment was had only by reason of the relationship of principal and agent, under the doctrine of respondeat superior. Radio Company asked that Oisboid be restrained from issuing execution, that the Marshal be restrained from levying, and that Transit Company be compelled to pay one-half of the judgment, or in the alternative, that Radio Company be permitted to pay the whole sum into the registry of the court and that Oisboid be required to assign one-half of the judgment to Radio Company. Transit Company and Oisboid moved to dismiss. The District Court sustained the motion, and the judgment was paid in full by Radio Company.

The trial court, in denying the right to contribution, concluded it was bound by our opinion in Curtis v. Welker.[1] In that case the question was, as it is here, whether appellants were entitled to contribution. The case was one of neglect of official duties by directors of a corporation. There was a suit and judgment against some, and these sought contribution from the others, not parties to the original suit. We held that all were in pari delicto, but said that while there was much equity in the claim to contribution, we were not free to enforce it because, as we thought, to do so would be contrary to the decision of the Supreme Court in Union Stock Yds. Co. v. Chicago, etc., R. R. Co.[2]

If we were disposed to adhere to the view expressed in the Curtis case, our statement to that effect, without more, would settle this case. But we have reached the conclusion that in the Curtis case we misapprehended the effect of the Stock Yards decision and applied a rule that, in our present view, is not sustainable upon any fair basis of reasoning, is wrong, and should be overruled.

This conclusion involves, of course, the obligation of explanation, and so we set out, as briefly as possible, the reasons which impel our present position.

The contention that no right of contribution exists between joint tort-feasors in pari delicto is said by counsel for appellee to have become an established rule in a majority of American courts in which the question has arisen. The statement is not without foundation. Professor Prosser of the University of Minnesota in his Hornbook on Torts points out that the early American cases applied the rule against contribution only in cases of wilful misconduct, but that later, when the door was thrown open to joinder in one action of those who had caused the same damage, the distinction between wilful misconduct on the one hand and negligence or mistake on the other was often lost sight of and resulted in decisions in cases of the latter class, in which the courts refused contribution and left the loss to lie where it fell. In most of such cases the reason for the application of the no-contribution rule was said to be based on the principle that the knowledge of a person that he is responsible for all the consequences of a wrong will serve to restrain him, and will thus induce persons to guard themselves a little more warily against participation with others in acts which might produce tort liability. That there may be some basis for this theory in cases in which persons directly contemplate the commission of a wrongful act is obvious, but that it applies equally in cases of unintentional wrong strains one's credulity. To believe that the rule of no contribution will tend to make a careless person careful, or that a motorist who is not deterred from carelessness by fear of personal danger will be affected in his conduct by a legal rule of no contribution between joint wrongdoers, seems to us wholly fanciful.[3]

And this, we think, is the present trend of those courts in which the question has recently been considered. And the reason

[1] 54 App.D.C. 272, 296 F. 1019.

[2] 196 U.S. 217, 25 S.Ct. 226, 49 L. Ed. 453, 2 Ann.Cas. 525.

[3] 81 Pa.L.Rev. 134.

for the change of view, though variously expressed, in the main hinges on the doctrine that general principles of justice require that in the case of a common obligation, the discharge of it by one of the obligors without proportionate payment from the other, gives the latter an advantage to which he is not equitably entitled. As the result, it is now, we think, definitely established in the better considered cases that there may be contribution in favor of one who has vicariously been required to bear the whole loss.

We are, therefore, of opinion that the rule denying contribution in favor of unintentional or negligent tort-feasors is wrong to the same extent that it would be wrong to enforce contribution in the case of wilful wrongdoers or those guilty of flagrantly wrongful conduct, and we cite in the footnote below some of the cases in which the position we take is logically sustained.[4]

The distinction between the two classes of cases and between the rule and the exception, is explained and reasoned out to our satisfaction in Jacobs v. Pollard, 10 Cush., Mass., 287, 57 Am.Dec. 105, as follows: "It is undoubtedly the policy of the law to discountenance all actions in which a party seeks to enforce a demand originating in a wilful breach or violation, on his part, of the legal rights of others. Courts of law will not lend their aid to those who found their claims upon an illegal transaction. No one can be permitted to relieve himself from the consequences of having intentionally committed an unlawful act, by seeking an indemnity or contribution from those with whom or by whose authority such unlawful act was committed. But justice and sound policy, upon which this salutary rule is founded, alike require, that it should not be extended to cases, where parties have acted in good faith, without any unlawful design, or for the purpose of asserting a right in themselves or others, although they may have thereby infringed upon the legal rights of third persons. It is only when a person knows, or must be presumed to know that his act was unlawful, that the law will refuse to aid him in seeking an indemnity or contribution. It is the unlawful intention to violate another's rights, or a wilful ignorance and disregard of those rights, which deprives a party of his legal remedy in such cases. It has, therefore, been held, that the rule of law, that wrongdoers cannot have redress or contribution against each other, is confined to those cases where the person claiming redress or contribution, knew or must be presumed to have known, that the act, for which he has been mulcted in damages, was unlawful."

Some recent cases applying this principle are: Hobbs v. Hurley, 117 Me. 449, 104 A. 815; Ellis v. Chicago & N. W. Ry. Co., 167 Wis. 392, 167 N.W. 1048, 1049; Horrabin v. City of Des Moines, 198 Iowa 549, 199 N.W. 988, 38 A.L.R. 554; Underwriters at Lloyds of M. v. Smith, 166 Minn. 388, 208 N.W. 13; Goldman v. Mitchell-Fletcher Co., 292 Pa. 354, 141 A. 231; Eureka Coal Co. v. Louisville & N. R. Co., 219 Ala. 286, 122 So. 169; Quatray v. Wicker, 178 La. 289, 151 So. 208. The sum and substance of the ruling in all is that, where the parties are not intentional and wilful wrongdoers, but are made such by legal inference or intendment, contribution may be enforced. Since in the case we are considering it is admitted that the acts, out of which the judgment was had, resulted from mere negligence and were involuntary and unintentional, we are of opinion that the correct rule to apply is that just above stated. Here, as we have seen, there was no personal participation

4 Betts v. Gibbons, 2 Adolp. & Ellis 57; Pearson v. Skelton, 1 Mees. & Welsb. 504; Wooley v. Batte, 2 Car. & P. 417; Thweatt's Adm'r v. Jones, 1 Rand., Va., 328, 10 Am.Dec. 538; Payne et al. v. Charleston Nat. Bank et al., 112 W.Va. 251, 164 S.E. 252; Skala v. Lehon, 343 Ill. 602, 175 N.E. 832; Ellis v. Chicago & N. W. Ry. Co., 167 Wis. 392, 167 N.W. 1048; Wait v. Pierce, 191 Wis. 202, 209 N.W. 475, 210 N.W. 822; Goldman v. Mitchell-Fletcher Co., 292 Pa. 354, 141 A. 231; Hobbs v. Hurley, 117 Me. 449, 104 A. 815; Turner v. Kirkwood, 10 Cir., 49 F.2d 590; Duluth, M. & N. Ry. Co. v. McCarthy, 183 Minn. 414, 236 N.W. 766; Parker v. Rodgers, 125 Pa.Super. 48, 189 A. 693; Eureka Coal Co. v. Louisville & N. R. Co., 219 Ala. 286, 122 So. 169; Furbeck v. I. Gevurtz & Son, 72 Or. 12, 22, 143 P. 654, 922; Smith v. Foran, 43 Conn. 244, 21 Am.Rep. 647; Georgia S. & F. Ry. Co. v. Jossey, 105 Ga. 271, 31 S.E. 179; Hill v. Murphy, 212 Mass. 1, 98 N.E. 781, 40 L.R.A.,N.S., 1102, Ann. Cas.1913C, 374; Gaffner v. Johnson, 39 Wash. 437, 81 P. 859. And see Prosser on Torts, 1111; 1 Cooley on Torts, 4th Ed., 297, 298.

in the wrong, and the liability of both parties in the original damage suit existed only as the result of the relationship of principal and agent under the doctrine of respondeat superior or, in other words, by implication of law. In the circumstances, it would, we think, be contrary to the principles of natural justice, of reason, and of common sense, to impose unconditionally the whole loss on one of them.

Counsel for appellee insist, however, that whatever may be our present view, we are nevertheless controlled by the decision of the Supreme Court in the Stock Yards case and, having in the Curtis case recognized this obligation, we are just as much bound to do so in the present case. We have given serious thought to this challenge and, with great respect to the views of counsel, have reached the conclusion that we are not foreclosed and that the question is open for such finding as we think to be right.

The Stock Yards case was not a suit for contribution. In that substantial respect it differed from the case under consideration. It was instead a case for indemnity in which one of the parties, having discharged the whole liability, sought to recover the whole outlay from the other. The facts were that a railroad company had delivered a car with defective brakes to a terminal company. Both companies had failed to discharge the duty of inspection. An employee of the terminal company who was injured because of the bad condition of the car, sued that company alone and recovered. In a suit by the terminal company against the railroad company to recover the whole amount paid on the judgment, the Supreme Court said that as both companies were wrongdoers and as both were guilty of neglect of duty, the fact that the first duty of inspection was required of the railroad company did not bring the case within the rule permitting one wrongdoer mulcted in damages to recover indemnity from another on the ground that the latter was primarily responsible. No more than this was decided, though it is quite true that the Supreme Court did say—in an extrinsic discussion of the principles of contribution— "that one of several wrongdoers cannot recover against another wrongdoer, although he may have been compelled to pay all the damages for the wrong done" [196 U.S. 217, 25 S.Ct. 227, 49 L.Ed. 453, 2 Ann.Cas. 525]. But this statement, not being, as we think, responsive to the case then before the court, was no more than a "general expression", of which Chief Justice Marshall said in Cohens v. Virginia,[5]—it is to be respected but ought not to control. This we say on the assumption that there is a manifest distinction, though at times lost sight of, between suits in contribution and suits in indemnity. For, as is often said, the latter implies a primary or basic liability in one person, though a second is also liable with the first to a third. In such a case the discharge of the obligation by the second person leaves him with a right to secure compensation from the one who, as between themselves, is primarily liable. As between such persons, the obligation "is not consensual", but is based altogether upon the law's notion—influenced by an equitable background—of what is fair and proper between the parties.[6] The most familiar types under this rule are cases in which a municipal corporation is held liable to a person injured by defects in a highway and is allowed to secure reimbursement from the parties who created the defect;[7] or in which the occupant of premises is held liable for injuries from dangerous conditions thereon and is allowed to recover from the one who, unknown to him, created the dangerous condition;[8] or in which the owner of leased premises who is made to pay the damages may recover from the lessee in possession.[9] The difference between indemnity and contribution—in cases between persons liable for a wrong—is that in the former the law implies an agreement or obligation and enforces a duty on the primary or principal wrongdoer to respond for all the damages, whereas in the latter, there is no agreement, express or implied, but a common burden in which the parties stand in equali juri and which in equity and good conscience should be equally borne. This maxim has its parallel in the admiralty rule of "general average": that what is given for the general benefit of all, should be made good by contribution of all in proportion to the respective interests. In the Stock Yards

---

[5] 6 Wheat. 264, 5 L.Ed. 257.
[6] 81 Pa.L.Rev. 130.
[7] Washington Gaslight Co. v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 40 L.Ed. 712.

[8] Georgia Power Co. v. Banning Cotton Mills, 42 Ga.App. 671, 157 S.E. 525.
[9] Oceanic S. N. Co. v. Compania Trans. Espanola, 134 N.Y. 461, 31 N.E. 987, 30 Am.St.Rep. 685.

case the Supreme Court recognized the indemnity rule, but refused to apply it because the evidence showed no basic or primary liability. If the case had been brought to recover a ratable proportion of a common loss, it is not unlikely the decision would have sustained the right, for the recognition of the indemnity rule in a case of basic or primary liability is consistent with the recognition of the contribution rule where the equities are equal. But if there be doubt of this, there is none that today in similar circumstances the Supreme Court, under the new doctrine announced in Erie R. Co. v. Tompkins,[10] would, without regard to any views of its own, apply the common law existing by authority of the State of Nebraska, whence the case originated, and hold that contribution is allowable.[11]

█ From this it follows that there is not, nor can be, since the Erie case any fixed and binding federal rule of general application. And this, we think, imposes on us the duty to exercise our own judgment in deciding the question. In this view, for reasons which we have given, we adopt for the District of Columbia the rule that when the parties are not intentional and wilful wrongdoers, but are made so by legal inference or intendment, contribution may be enforced.[12]

Reversed.

EDGERTON, Associate Justice (dissenting).

No doubt contribution seems just as between the tortfeasors, but a recent study by Professor James of the Yale Law School leads me to doubt whether it is good for society. He found, among other things, that "Contribution in practice is mainly used in two types of cases: those in which an insurance company or a large self-insurer seeks it against an uninsured individual; and those in which a self-insurer or insurance company seeks it against another such company. * * * In the first situation, contribution allows defendants who * * * [could] distribute the loss over society to cast it back instead onto the shoulders of individuals who cannot distribute it at all. In the second situation contribution does little good—for the injustices it would eliminate cancel each other out under the present law."[1] I am inclined to agree with his conclusion that "The common law rule forbidding contribution among tort-feasors should * * * be retained, even though it mars a theoretical symmetry in the law of negligence."

---

[10] 304 U.S. 64, 79, 58 S.Ct. 817, 82 L. E. 1188, 114 A.L.R. 1487.

[11] First Nat. Bank v. Avery P. Co., 69 Neb. 329, 95 N.W. 622, 625, 111 Am. St.Rep. 541.

[12] 1 Cooley on Torts, 4th Ed., 297, 298.

[1] James, Contribution Among Joint Tortfeasors: A Pragmatic Criticism, 54 Harv. L.Rev. 1156, 1169.