## WOODSIDE MANOR, Inc. v. ROSE BROTHERS CO.
### No. 1115.

Municipal Court of Appeals for the District of Columbia.

Argued Aug. 27, 1951.

Decided Sept. 19, 1951.

Mark P. Friedlander, Washington, D. C., for appellant.

Stephen G. Ingham, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Woodside Manor is a new apartment development located in nearby Maryland. It was constructed by Banks & Lee, Inc., a general contractor under contract with Woodside Manor, Inc., the plaintiff corporation. Banks & Lee, Inc., employed a subcontractor, Rose Bros., Inc., the defendant corporation, to install the roofing on the various buildings which comprise the project. Plaintiff claimed that the roof of one of the buildings was defectively laid through negligence and as a result water leaked into the apartment of one of the tenants on the top floor. This water seepage allegedly resulted in damage to the tenants' personal effects in the apartment and ultimately caused parts of the ceiling to collapse on two separate occasions further damaging personal property. The tenants, husband and wife, filed suit in

Maryland against their landlord, plaintiff here, to recover their damage. Before the trial of that action, a settlement was reached under which Woodside Manor paid $300 to the tenants. Woodside Manor then brought this action against the defendant roofing company, to recover the amount paid in such settlement, the cost of repairing the interior of the apartment, and for attorney's fees and certain court costs incurred in defending and settling the tenants' claim. At the conclusion of the plaintiff's evidence the trial court found for the defendant and plaintiff appeals.

A witness for the plaintiff testified that moisture or leakage from the roof was noticed by the tenants almost immediately after moving into the apartment in January 1948 after its completion by the builder. Numerous complaints were made to the manager of the apartments and it was testified that on some twenty to twenty-five occasions throughout the year defendant Rose Bros., Inc. was called upon to investigate and remedy the condition. Banks & Lee, Inc., the general contractor, was also notified. Throughout this period defendant denied that the water in the apartment was the result of any defect in the roof and claimed that it was the result of "condensation." The tenants were requested several times by the plaintiff's agent to move to another apartment so that the trouble could be located but they refused. In January 1949, one year after the apartment was originally occupied, part of the ceiling collapsed and a few weeks later another part fell. A rug and some furniture were damaged. Banks & Lee, Inc. then notified the defendant by letter that the roof was defective and several months later the roof was re-laid, by the defendant. Plaintiff repaired the interior of the tenants' apartment.

 Plaintiff argues that it should be allowed to recover from the defendant on the theory of "subrogation"; that having been compelled to settle the tenants' claim against it and having repaired the interior of the apartment at its own expense, it should be reimbursed by defendant. But the elements necessary to invoke the doctrine of subrogation are not present. Among those excluded from the right to subrogation are those who discharge debts upon which their liability is primary.[1] Plaintiff might better have termed his theory of recovery as one of indemnity, at least with regard to the amount it had to pay for damages suffered by the tenants to their personal property. This doctrine "implies a primary or basic liability in one person, though a second is also liable with the first to a third. In such a case the discharge of the obligation by the second person leaves him with a right to secure compensation from the one who, as between themselves, is primarily liable."[2]

 But the barrier to applying this doctrine to the present case is the non-existence of liability by the defendant roofing company to the tenants. It is well settled that, subject to certain exceptions not here pertinent, an independent contractor is not liable to a third person who is damaged as a result of the contractor improperly or negligently performing his contract where the work has been completed and accepted by the owner.[3] "After completion and acceptance of a building, the liability of the builder for accidents caused by defective construction ceases and the liability attaches to the owner, whether the damage is attributable to his own negligence or to that of the builder."[4] Defendant installed the roof pursuant to its contract with the general contractor. The building was completed and was occupied. Plaintiff was notified of the condition in the tenants' apartment almost immediately

1. 50 Am.Jur., Subrogation, § 20.

2. George's Radio v. Capital Transit Co., 75 U.S.App.D.C. 187, 190, 126 F.2d 219, 222.

3. Ford v. Sturgis, 56 App.D.C. 361, 14 F. 2d 253, 52 A.L.R. 619; Anno, 123 A.L.R. 1197.

4. 9 C. J., Building & Construction Contracts, § 85, p. 751; 6 Thompson on Negligence, p. 465, cited with approval in Ford v. Sturgis, supra.

after occupancy and for a whole year was afforded an opportunity to remedy it. We have said previously that the landlord is responsible for failure to repair a roof which is under his control.[5] Bailey v. Zlotnick, 77 U.S.App.D.C. 84, 133 F.2d 35, is cited by the plaintiff as authority for the position that the defendant would be liable to the tenants. In that case there was no subcontracting involved, but the primary contractor installed a heating system into which he ran water and damages from falling plaster followed immediately either from faulty construction or careless turning on of the water. The case is clearly distinguishable from the present one.

Affirmed.

5. Hariston v. Washington Housing Corp., D.C.Mun.App., 45 A.2d 287.