UNITED STATES STEEL CORPORATION, a corporation, successor to American Bridge Company, a corporation,

v.

EMERSON–COMSTOCK CO., Inc., a corporation.

No. 46 C 1424.

United States District Court
N. D. Illinois.

Feb. 16, 1956.

Harlan L. Hackbert, Stevenson, Conaghan, Velde & Hackbert, Chicago, Ill., for plaintiff.

Eugene P. Kealy, Chicago, Ill., for defendant.

HOFFMAN, District Judge.

The main issue presented by the instant case is whether the language used by the parties in their contract requires the defendant to indemnify the plaintiff for losses resulting from the plaintiff's negligence. The plaintiff does not here dispute that the loss was occasioned by its negligence. That issue was decided against the plaintiff in a suit in the United States District Court for the Northern District of Indiana, Hammond Division, and the judgment was affirmed by our Court of Appeals. Cole v. American Bridge Co., 7 Cir., 152 F.2d 157.

There are two subsidiary issues which will require decision only if the indemnity clause is construed as protecting the plaintiff from its own negligence: (1) whether the plaintiff acted as a "volunteer" so as to disqualify itself from recovering in whole or in part indemnity for the sum expended by the plaintiff in paying, pursuant to its own agreement with a joint tortfeaseor, one-half of the amount of a joint and several judgment against the plaintiff and the joint tortfeasor; and (2) whether the plaintiff may·recover the amounts which it paid for interest on the judgment, attorneys' fees and court costs resulting from an unsuccessful appeal.

The contractual obligation of the defendant to indemnify the plaintiff was part of a contract by which the defendant agreed to dismantle all electrical equipment and wires in a group of buildings at Gary, Indiana, which plaintiff had purchased. The seller of the buildings retained title to all electrical equipment and wires, plaintiff agreed to dismantle and remove such material at its expense, and contracted to have the defendant do the dismantling.

■ Cole, an electrician employed by the defendant, was severely burned while engaged in dismantling the wires. The injury resulted from the negligent turning on, without warning to Cole, of electric current in wires with which Cole was working. Cole filed a suit for damages for negligence naming as joint defendants the party who is the plaintiff here and the seller of the buildings. Cole recovered a joint and several judg‚ ment against them for $12,000, in the United States District Court for the Northern District of Indiana. Cole's.

own employer, the defendant here, was not a party to that suit. Cole did not name the instant defendant as a party because obviously Cole's recourse against the defendant would have been solely under the Indiana Workmen's Compensation Act, Burns' Ann.St. § 40–1201 et seq. Although the defendant as indemnitor was given notice and requested to defend, the defendant declined to do so, apparently on the ground that defendant believed that the injury was occasioned by the indemnitee's own negligence and as such was not covered by indemnity agreement.

In the negligence suit our Court of Appeals found that at the time he was injured Cole was working under the supervision of three different companies, his own employer who is the indemnitor and defendant here, the buyer of the buildings who is the indemnitee and the plaintiff here, and the seller of the buildings who retained title to the electrical wires and equipment involved. Cole v. American Bridge Co., 7 Cir., 152 F.2d 157, 160. Nothing in the decision of that case undertakes to fix the responsibility for the injury as between these three companies. The decision merely holds that Cole was entitled to go to the jury on the issue of whether the two who were defendants in that suit were negligent "either in turning on the electric current without first ascertaining where plaintiff [Cole] was working or in failing to warn plaintiff [Cole] that the current was to be sent through the wires upon which he was working." Id, 152 F.2d at page 160.

In this suit the plaintiff here has accepted as conclusive of its negligence the jury's verdict of joint and several liability of both the plaintiff and the seller of the buildings and affirmance thereof by the Court of Appeals. In the instant suit the plaintiff bases its case solely on the proposition that the language of the indemnity clause obligates the defendant to indemnify it for all losses incident to performance of the contract, including those caused by the plaintiff's own negligence. Since, as hereafter appears, the court agrees with this construction of the contract, the court has no occasion to, and does not, examine the facts respecting the negligence to determine whether primary responsibility therefor may have rested on the defendant itself or on the seller of the buildings rather than on the plaintiff.

The indemnity clause which is determinative of the case imposes on the defendant the obligation

"To provide all proper safeguards in performing the work, to save harmless and defend [plaintiff] American Bridge Company from and against all suits, actions, legal proceedings, claims, demands, damages, costs, expenses and attorney's fees, in any manner caused by, arising from, incident to, connected with or growing out of the performance of this contract."

This contract was accepted in Illinois, contemplated performance in Indiana and was performed in Indiana. This being a diversity suit it is governed by state law. Since both Illinois and Indiana follow the overwhelming weight of modern authority with respect to the law applicable to a suit by an indemnitee for losses occasioned by the indemnitee's own negligence, there are no conflict of law problems for decision.

While there are early cases in some states expressing a public policy against indemnifying a tortfeasor for his own negligence it is today well established that the parties may so contract. Modern legal theory does not ignore the desirable objective of accident prevention which motivated the earlier decisions. But it finds nothing in the financial arrangements by which the business community through insurance and indemnity agreements allocates losses, inconsistent with that objective. The one on whom the contract imposes the liability has the same incentive to prevent the losses. Increased premiums and increased cost of services or materials act to deter the insured or indemnitees in the long run. At the same time society benefits through the spreading of the burdens of these

unfortunate events and business does not have to risk the uncertainties of uninsured or unindemnified losses.

The Restatement of the Law of Contracts states the modern rule as follows:

"§ 574. Legal Bargains for Exemption From Liability For Negligence.

"A bargain for exemption from liability for the consequences of negligence not falling greatly below the standard established by law for the protection of others against unreasonable risk of harm, is legal except in cases stated in § 575.

"*Comment*:

"a. By negligence is meant any conduct not recklessly disregardful of the interests of others which falls below the standard established by law for the protection of others against unreasonable risk of harm. By gross negligence is meant conduct falling greatly below that standard."

The exceptions stated in Section 575 are here inapplicable. They relate to contracts between parties where one is in a position to take advantage of the other, as the employer contracting with its employees, and a party charged with a duty of public service contracting with a member of the public. In the instant case the parties to the indemnity agreement are business concerns who contract on a basis of equal bargaining power.

Once it is determined that such agreements are to be deemed perfectly legitimate business arrangements, the only issue is that of determining whether the parties intended that the negligence of the indemnitee be a covered risk. For the leading cases applying Illinois and Indiana law in construing indemnity agreements to determine whether the language used should be fairly construed as encompassing the indemnitee's negligence, see Insurance Co. of North America v. Elgin, J. & E. Ry. Co., 7 Cir., 229 F.2d 705; Chicago & N. W. R. Co. v. Chicago Packaged Fuel Co., 7 Cir., 1950,

183 F.2d 630, 632; Russell, for Use of Continental Casualty Co. v. Shell Oil Co., 1949, 339 Ill.App. 168, 89 N.E.2d 415. In each of these cases it was held that language used was broad enough to include the risk of the indemnitee's negligence although there was no express reference to that risk. For cases from other jurisdictions see Annotation: Validity of contractual provision by one other than carrier or employer for exemption from liability, or indemnification, for consequences of own negligence, 175 A.L.R. 8.

The language used in the indemnity clause between plaintiff and defendant is all inclusive. The defendant agreed to save harmless and defend the plaintiff "from and against all suits, actions, legal proceedings, claims, demands, damages, costs, expenses and attorney's fees, in any manner caused by, arising from, incident to, connected with or growing out of the performance of this contract." There cannot be any broader classification than "all * * * claims * * * in any manner * * * incident to, connected with or growing out of the performance of this contract." The phrase "in any manner caused" obviously includes claims arising from anyone's negligence, including the indemnitee's negligence.

The hazard of an injury to Cole from fire caused by electricity while removing the wiring was one of the risks incident to the performance of the contract. It is most unrealistic to assume that the two business concerns party to the contract had any intent that the broad language they used should make the coverage of any injuries to employees working on the dismantling of wires dependent upon whether an employee of the plaintiff rather than an employee of the defendant was involved in the turning on of current or in failing to warn the injured employee. Businessmen do not draft contracts using such all-embracing language if they have any such unexpressed reservations in mind.

Accordingly it is held that the indemnity clause of the contract between plain-

tiff and defendant requires the defendant to indemnify the plaintiff for the loss which the plaintiff suffered as a result of the injury to Cole.

The subsidiary issues relating to the amount which plaintiff may recover must likewise be decided in the plaintiff's favor. The argument that plaintiff was a "volunteer" in paying one-half of the judgment which Cole had recovered against plaintiff and its joint tortfeasor, is untenable. The plaintiff was subject to a judgment in favor of Cole under which Cole could have held plaintiff for the full $12,000, plus interest and costs. If plaintiff had remained inactive and let Cole proceed to levy and collect the full judgment from it, the defendant would be compelled to indemnify plaintiff for the full amount. Similarly if plaintiff had paid the full judgment instead of waiting levy and execution, it could have collected the full amount from defendant.

■ No one is ever a volunteer when he pays only the sum which a judgment of court fixes as due from him. And this is true irrespective of the fact that there are co-defendants jointly and severally liable for the full amount of the judgment. Cf. Berylwood Inv. Co. v. Graham, 1941, 43 Cal.App.2d 659, 671, 111 P.2d 467, 475.

■ Indiana and Illinois follow the common law rule that joint tortfeasors are not entitled to contribution from each other. Jackson v. Record, 1937, 211 Ind. 141, 145, 5 N.E.2d 897, 898; Aldridge v. Morris, 1949, 337 Ill.App. 369, 375–376, 86 N.E.2d 143; Johnson v. Chicago & Pacific Elevator Co., 1882, 105 Ill. 462, 467–468, affirmed 119 U.S. 388, 7 S.Ct. 254, 30 L.Ed. 447. While there are some jurisdictions which by either judicial decision, e. g., George's Radio v. Capital Transit Co., 1942, 75 U.S.App.D.C. 187, 126 F.2d 219, or legislative action (e. g., Uniform Contribution Among Tortfeasors Act) have abandoned the common law rule, it still has strong support. See Judge Edgerton dissenting in George's Radio case, supra, 126 F.2d at page 223; Fleming James, Jr., Contribution Among Joint Tortfeasors: A Pragmatic Criticism, 54 Harv.L.Rev. 1156 (May, 1941); Note: Torts—Joint Tortfeasors—Right to Contribution As Affected by Separate Settlements, 27 Notre Dame Lawyer 653 (Summer 1952).

Even without a judgment, it has been held that if, as here, the indemnitor denies liability and refuses to defend, one of two joint tortfeasors is not a volunteer when it pays the full amount of a liability. Luton Mining Co. v. Louisville & N. R. Co., 1938, 276 Ky. 321, 330–331, 123 S.W.2d 1055, 1060. There the court said:

"It seems clear to us that the railroad company was not acting as a volunteer in making the settlement with Jagoe's Administratrix. Regardless of the fact that the mining company might have had a primary liability imposed on it for this accident, nevertheless the railroad company also had this liability imposed on it if there was negligence rendering someone liable to the administratrix. * * * As said by this court in Ligons Adm'r v. Evansville Railways Co., 165 Ky. 202, 176 S.W. 968, 971: ' * * * In such state of case the person injured may maintain a joint action against both wrongdoers. * * *'

"As establishing definitely that the railroad company was not a volunteer in making this settlement, we find that the mining company, when notified that the railroad company expected to be indemnified on account of this accident, denied liability under the contract. * * *

"The mining company having denied liability under the contract of indemnity, there seems little question that the railroad company thereupon had the right to exercise a reasonable judgment in settling the case. * * *"

Here the plaintiff, however, did not pay the full amount of the judgment. By agreement with the other judgment debtor, they each paid half. At common

law an equal division among joint tortfeasors was recognized as fair. In Selz v. Unna, 1867, 6 Wall. 327, 73 U.S. 327, 336–337, 18 L.Ed. 799, the court said:

"* * * Equal contribution to discharge a joint liability is not inequitable, even as between wrongdoers, although the law will not, in general, support an action to enforce it where the payments have been unequal. Where the liability is joint equal contribution is just, and it would afford the complainants no ground of relief if it appeared that the arrangement with the marshal was such as is alleged in the bill or complaint." (Footnotes omitted.)

In those jurisdictions where contribution is allowed, the equal division of the loss is the rule. George's Radio v. Capital Transit Co., 1942, 75 U.S.App.D.C. 187, 126 F.2d 219; Uniform Contribution Among Tortfeasors Act.

■ And if any legal basis could exist for suggesting that plaintiff's contribution should have been less than one-half, the defendant by its denial of liability as indemnitor and its refusal to defend became bound by any reasonable amount the plaintiff paid in settlement of the liability. In Chicago, R. I. & P. R. Co. v. Dobry Flour Mills, 10 Cir., 1954, 211 F.2d 785, 788, the court said:

"* * * where the indemnitor denies liability under the indemnity contract and refuses to assume the defense of the claim, then the indemnitee is in full charge of the matter and may make a good faith settlement without assuming the risk of being able to prove absolute legal liability or the actual amount of the damage. [Citing cases.] A contrary rule would make the right to settle meaningless in cases where the indemnitor has denied liability."

To the same effect see Luton Mining Co. v. Louisville & N. R. Co., 1938, 276 Ky. 321, 330–331, 123 S.W.2d 1055, 1060.

The plaintiff's conduct in arriving at an arrangement with its co-judgment-debtor whereby they each paid half of the judgment was obviously reasonable and in good faith. The court cannot see the slightest basis for relieving the defendant from indemnifying the plaintiff for the half share of the judgment which the plaintiff assumed and paid.

■ Nor, in view of the defendant's refusal to defend, is there any basis for denying the plaintiff recovery for the amount of interest, attorney's fees and costs which it paid on account of the unsuccessful appeal. If the plaintiff had not participated in the appeal it would have risked being left as the sole judgment debtor for a liability which the defendant denied was covered by the indemnity agreement. For, if its co-defendant in that suit had been successful on an appeal prosecuted solely by it, the judgment would have been left in effect against only the plaintiff. In these circumstances the plaintiff's participation in the appeal was reasonably necessary to protect its interests and to reduce the potential liability of the defendant. It is well established that in instances where the indemnitor denies any liability the interest, attorney's fees and costs incident to an unsuccessful appeal may be recovered so long as the appeal was taken in good faith. Fidelity & Casualty Co. of New York v. Bisso, 1934, 179 La. 56, 64–65, 153 So. 19, 22; Hartford Accident & Indemnity Co. v. Worden-Allen Co., 1941, 238 Wis. 124, 133, 297 N.W. 436, 440. As long as the indemnitor is denying all liability the appeal is not a useless act. The indemnitee is not required to gamble solely on the success of a suit against the indemnitor. It is equally entitled to protect itself by an appeal which may save it if its suit against the indemnitor proves ill founded.

Judgment will accordingly be entered for the plaintiff with costs in conformity with this opinion. Counsel for the plaintiff are directed to prepare a judgment order and to submit the same to the court for signature on or before March 12, 1956.