**AETNA CASUALTY AND SURETY COMPANY, Plaintiff,**

v.

**Harry Clifford PORTER, Defendant.**

**Civ. A. No. 57–57.**

United States District Court
District of Columbia.

Jan. 22, 1960.

John L. Laskey, Washington, D. C., for plaintiff.

Ethelbert B. Frey, Charles E. Morganston, Washington, D. C., for defendant.

TAMM, District Judge.

This is an action brought by the plaintiff Aetna Casualty and Surety Company, a corporation doing business in the District of Columbia, against the defendant Harry Clifford Porter for recovery of $16,459.72. The theory of the plaintiff's case is that it is entitled to indemnity from the alleged actual or "primarily liable" wrongdoer, namely this defendant, for the money with which this plaintiff parted in settlement of a law suit and for the expenses therein, which suit charged this plaintiff's insured with negligence.

The portion of the policy pertaining to subrogation is as follows:

"9. In the event of any payment under this policy, the Company shall be subrogated to all the insured's rights of recovery therefor * *."

The defendant in this case was present in Court, represented by counsel of his own choosing. The defendant is present-

ly confined in St. Elizabeth's Hospital, he having been adjudicated as mentally incompetent by a court order dated November 14, 1952. The defendant had been indicted on August 18, 1952 upon a charge of first degree murder, the indictment charging that he had, on July 12, 1952, murdered Codie A. Whitman "by means of placing a towel around her neck thereby causing asphyxia due to strangulation." The defendant has remained in the custody of St. Elizabeth's Hospital, but an order of October 23, 1959 ruled that the defendant was then mentally competent to stand trial. Thereafter, upon hearing upon this matter, the Court, on December 14, 1959, found the defendant not guilty of the charge of first degree murder "by reason of insanity" and the defendant was ordered committed to St. Elizabeth's Hospital. The defendant, throughout the criminal proceedings, was represented by an attorney of his own selection. This attorney, in Mental Health case 1714–52, was also appointed committee of the defendant and is still serving in that capacity. This attorney represented the defendant at the hearing in the present case.

*Background.*

Codie A. Whitman, on July 12, 1952, "was strangled to death with a painter's towel in apartment 201 of which she was a tenant in the Ritz Apartments at 1631 Euclid Street, N. W., District of Columbia." Kendall v. Gore Properties, 98 U. S.App.D.C. 378, 236 F.2d 673, 675. Subsequently, a suit for wrongful death was brought by Mabel D. Kendall, Ancillary Administratrix of the Estate of Codie A. Whitman, deceased, against Gore Properties, Inc. (owner of the Ritz Apartments), American Security and Trust Company, a corporation, and William Freeney Hickey (resident manager of Ritz Apartments). Gore Properties was the corporate employer of Harry C. Porter, and William F. Hickey was the corporate employer's manager.

The plaintiff in this action had issued a policy of insurance to Gore Properties, Inc., which gave insurance coverage to Gore Properties, Inc., and to William F. Hickey, the resident manager. This plaintiff in this action then properly undertook the defense in the case of Kendall v. Gore Properties, Inc.

Harry C. Porter was not a party to that suit, but the evidence in that case showed that, " * * * Miss Whitman was strangled and choked to death by an agent of the appellees, Harry Clifford Porter," Gore Properties, Inc., and William F. Hickey being appellees.

To briefly summarize the history of that suit, the District Court had directed a verdict at the close of the plaintiff's case in favor of the defendants. On appeal, the Court of Appeals held:

"We find no basis whatever upon which American Security and Trust Company can be said to be liable,"

but also held that the plaintiff-appellant, Kendall,

"made out, at the very least, a prima facie case of negligence. Thus, it was error for the trial judge to direct a verdict for the appellees." Kendall v. Gore Properties, Inc., 98 U.S.App.D.C. 378, 236 F.2d 673, 675 and 679,

and the case was reversed.

Subsequently, the case was settled by a consent judgment whereby the present plaintiff paid the sum of $11,000.00 to the plaintiff Mabel Kendall in the case of Kendall v. Gore Properties, Inc. Prior to this settlement, Aetna Casualty and Surety Company notified Harry C. Porter and his committee of its intentions to effect a settlement and to claim indemnity against Harry C. Porter. The only response to this came from the committee who stated that he would object to any settlement that involved the defendant as there was no trial or proof whatsoever. Then, in the early part of 1957, Aetna Casualty and Surety Company filed this present suit against Harry C. Porter on the theory previously stated.

This case came on for hearing before this Court on November 18, 1959. The evidence introduced on the part of the plaintiff, Aetna Casualty and Surety

Company shows that it had issued an insurance policy to Gore Properties, Inc., and when the suit of Kendall v. Gore Properties, Inc., was filed, Aetna undertook the defense of that suit from the beginning. It was also shown that Gore Properties, Inc., paid no expenses in the trial of that suit.

One of the witnesses who testified in this hearing for the plaintiff was Sgt. Lionel Coutre of the Homicide Squad. A portion of his testimony on direct examination was that in the course of his investigation of the death of Codie Whitman he talked with the defendant Harry C. Porter who told this witness that he was in Miss Whitman's apartment painting when she came in with groceries. Shortly thereafter, she jumped on his back, and he struggled with her. He also allegedly told Sgt. Coutre that he grabbed a towel, hit the floor and blacked out, and that when he came to, he saw the towel around her neck. Porter allegedly then picked her up, put her in a closet and left the apartment, but returned the next day with a friend of his. Sgt. Coutre said that Porter saw the towel around Miss Whitman's neck while at the morgue, and the towel was identified by the defendant as the one he used to wipe his hands.

The defendant Porter took the stand and said he did not commit any tort or assault upon Miss Whitman. He also testified that he does not remember making any statement concerning an assault upon her, or being told of his rights, or signing a confession. He also said that other people had been there with him and that when he sometimes left the apartment, he thinks that he left them there.

This was the only witness presented by the defendant. Other witnesses presented by the plaintiff were Ira C. Everett, Arthur J. Hilland and Justin Edgerton, all of whom testified as to the reasonableness of the amount of the settlement effected in Kendall v. Gore Properties, Inc. and also as to the reasonableness of the attorneys' fees.

The contentions of the plaintiff can be summarized as follows: Aetna issued insurance to Gore Properties, by reason of which it claims that it became subrogated to the rights of Gore Properties. Gore Properties was sued for a wrongful death committed by one of its employees, Harry C. Porter. Aetna defended this suit for Gore Properties and one of its employees, William F. Hickey, and paid the consent judgment, expenses and attorneys' fees. Although Gore Properties, Inc. was guilty of negligence, this negligence was passive or secondary and the active or primary tortfeasor was Harry C. Porter. Therefore, since Gore Properties, Inc., could claim indemnity against Harry C. Porter, Aetna can do so and thus should be given judgment for $16,459.72, the amount it has expended in the defense of the suit, Kendall v. Gore Properties, Inc.

The authorities and argument of the plaintiff may be outlined in the following manner and are treated in this order:

1. General principles of indemnity.

A. Right to indemnity recognized in District of Columbia.

B. Primary liability.

2. Fact that the case, Kendall v. Gore Properties, Inc., was not tried should not work as a bar to this plaintiff.

3. Insanity of Harry C. Porter is no defense in this action.

4. Negligence by the insured does not affect this suit.

*1. General Principles of Indemnity.*

■ *A. Right to indemnity recognized in District of Columbia.*

Washington Gas Light Company v. District of Columbia, 161 U.S. 316, 16 S.Ct. 564, 568, 40 L.Ed. 712. In this case, Marietta Parker sued the District of Columbia for injuries sustained when she fell into a hole which, at the trial, was shown to have been an open gas box placed and maintained by the Gas Company for its own use and benefit and which it was its duty to repair. The District notified the Gas Company that it would be expected to indemnify the Dis-

trict for any amount that it might have to pay Parker. The Gas Company was not a party to the suit and did not enter the suit. The plaintiff received a verdict of $5,000.00. The District then sued the Gas Company to recover the amount of the judgment that Parker had obtained and which the District had paid, and there was a verdict and judgment for the District.

Two of the questions presented on appeal were: (1) Did the legal obligation primarily rest upon the Gas Company to repair and keep the gas box in good order, and, (2) Was the Gas Company liable over to the District by its failure to do so? In response to Question 1, the Court answered in the affirmative. The Court answered Question 2 by saying:

"An affirmative answer to this proposition is rendered necessary by both principle and authority. This court said in [City of] Chicago v. Robbins, 2 Black, 418, 422 [17 L. Ed. 298]: 'It is well settled that a municipal corporation having the exclusive care and control of the streets, is obliged to see that they are kept safe for the passage of persons and property, and to abate all nuisances that might prove dangerous; and if this plain duty is neglected, and any one is injured, it is liable for the damages sustained. The corporation has, however, a remedy over against the party that is in fault, and has so used the streets as to produce the injury, unless it was also a wrongdoer.' The same doctrine is reiterated, in almost the identical language in Robbins v. [City of] Chicago, 4 Wall. 657, 670 [18 L.Ed. 427].

"The principle thus announced qualifies and restrains within just limits the rigor of the rule which forbids recourse between wrongdoers. In the leading case of Lowell v. Boston and Lowell Railroad, 23 Pick. [Mass.] 24, 32, the doctrine was thus stated: 'Our law, however, does not in every case disallow an action, by one wrongdoer against another, to recover damages incurred in consequence of their joint offense. The rule is, "In pari delicto, potior est conditio defendentis." If the parties are not equally criminal, the principal delinquent may be held responsible to his codelinquent for damages incurred by their joint offense. In respect to offenses, in which is involved any moral delinquency or turpitude, all parties are deemed equally guilty, and the courts will not inquire into their relative guilt. But where the offense is merely malum prohibitum, and is in no respect immoral, it is not against the policy of the law to inquire into the relative delinquency of the parties, and to administer justice between them, although both parties are wrongdoers.'

"In [City of] Brooklyn v. Brooklyn City Railroad, 47 N.Y. 475, [487] the same rule was applied, the court saying: 'Where the parties are not equally criminal, the principal delinquent may be held responsible too a codelinquent for damage paid by reason of the offense in which both were concerned in different degrees as perpetrators.' All the cases referred to involved only the right of a municipal corporation to recover over the amount of the damages for which it had been held liable in consequence of a defective street, occasioned by the neglect or failure of another to perform his legal duty. The rule, however, is not predicated on the peculiar or exceptional rights of municipal corporations. It is general in its nature."

One other important point decided in this case was the following: Was the judgment against the District rendered after notice to the Gas Company and opportunity afforded it to defend, conclusive of the liability of the Gas Company to the District? The Court stated as follows:

"As a deduction from the recognized right to recover over, it is settled that, where one having such

right is sued, the judgment rendered against him is conclusive upon the person liable over, provided notice be given to the latter, and full opportunity be afforded him to defend the action. There is here no question of the sufficiency of the notice, or of the ample adequacy of the opportunity given the gas company to defend the suit had it elected to do so.

"In both [City of] Chicago v. Robbins and Robbins v. [City of] Chicago, ubi supra, this court, after announcing the rule as to the liability over in the language already quoted, also held that where, in the first suit, proper notice was given to the party liable over, the first judgment would be conclusive against the latter in the action to recover over. In [City of] Boston v. Worthington [and others] 10 Gray, [Mass.], 496, 498, 499, the langauge of the court in Littleton v. Richardson, 34 N.H. 179, 187 was quoted and adopted:

" 'When a person is responsible over to another, either by operation of law or by express contract, and he is duly notified of the pendency of the suit, and requested to take upon him the defense of it, he is no longer regarded as a stranger, because he has the right to appear and defend the action, and has the same means and advantages of controverting the claim as if he were the real and nominal party upon the record. In every such case, if due notice is given to such person, the judgment, if obtained without fraud or collusion, will be conclusive against him, whether he has appeared or not.' "

*B. Primary Liability.*

George A. Fuller Co. v. Otis Elevator Co., 245 U.S. 489, 38 S.Ct. 180, 62 L.Ed. 422. This was a suit by Fuller to recover indemnity for a judgment that it had to pay pursuant to the decision of the court in Geo. A. Fuller Co. v. McCloskey, 228 U.S. 194, 33 S.Ct. 471, 57 L.Ed. 795. McCloskey, plaintiff in last-cited case, had been injured through the negligence of one Locke, and by reason of the relation between Locke and Fuller, the latter became answerable and liable. Fuller, in this suit, now contends that Locke was the servant of the Elevator Company, as between the parties now in court. "If the petitioner is right and the primary duty rested on the Elevator Company it may recover in the present suit, unless the former proceedings constitute a bar."

There was evidence to show that Otis had control at the time of the accident and the jury found for the plaintiff, Fuller Company.

The Court of Appeals [44 App.D.C. 287], however, set the judgment aside, saying:

" 'In view of the adjudicated facts which were not open to the consideration of a second jury there was no such primary liability on the part of the Otis Company as will support an action for indemnity.' "

This Court continued and said:

"But there were no facts, whether adjudicated in the former case or not, that were not open to the consideration of the jury in this. The Otis Company was joined as a party defendant, it is true, in the former action, and a verdict was directed in its favor. But even if the former verdict against the petitioner had gone on the same issue that was tried in the present case, which was not the fact, it could not have concluded the petitioner in favor of the Otis Company for the reason, if no other, that the Otis Company was dismissed from the suit before the petitioner's evidence was heard.

"The former judgment did not decide that the evidence in the present case showed as matter of law that Locke, who was in the general service of the Otis Company, was transferred for the moment to the petitioner. It did decide as matter of law that as between the Mackay

Company and the petitioner their agreement left the petitioner responsible. It had no occasion to decide and did not purport to decide more. Even if it had gone farther it would have been res inter alios as an adjudication and it would not have been a precedent because the evidence in the present case had additional details which, if meagre, still made it impossible to say as matter of law that the Otis Company did not retain control."

George's Radio, Inc. v. Capital Transit Co., 75 U.S.App.D.C. 187, 126 F.2d 219. In this case, Oisboid sued George's and Capital Transit Co. for damages as the result of a collision between his automobile, George's automobile and a Transit bus. He received a judgment against both defendants but demanded that George's pay the judgment in full. George's then brought suit to restrain Oisboid from issuing execution on the judgment, to restrain the Marshal from levying, and to compel Transit to pay one half of the judgment.

The question in this case, as phrased by the Court, is " * * * whether—in the District of Columbia—a right of contribution exists and should be declared between two persons liable for a tort in the absence, on the part of either, of any personal participation, personal culpability, fraud, or moral wrong."

The court held that, "there may be contribution in favor of one who has vicariously been required to bear the whole loss," and "that the rule denying contribution in favor of unintentional or negligent tortfeasors is wrong to the same extent that it would be wrong to enforce contribution in the case of wilful wrongdoers or those guilty of flagrantly wrongful conduct, * * *"

The court also cited the case of Jacobs v. Pollard, 10 Cush., Mass., 287, 57 Am. Dec. 105, which held,

"that the rule of law, that wrongdoers cannot have redress or contribution against each other, is confined to those cases where the person claiming redress or contribution, knew or must be presumed to have known, that the act, for which he has been mulcted in damages, was unlawful."

And, 75 U.S.App.D.C. at page 189, 126 F.2d at page 221:

" * * * The sum and substance of the ruling in all is that, where the parties are not intentional and wilful wrongdoers, but are made such by legal inference or intendment, contribution may be enforced. Since in the case we are considering it is admitted that the acts, out of which the judgment was had, resulted from mere negligence and were involuntary and unintentional, we are of opinion that the correct rule to apply is that just above stated. Here, as we have seen, there was no personal participation in the wrong, and the liability of both parties in the original damage suit existed only as the result of the relationship of principal and agent under the doctrine of respondeat superior or, in other words, by implication of law. In the circumstances, it would, we think, be contrary to the principles of natural justice, of reason, and of common sense, to impose unconditionally the whole loss on one of them."

While the foregoing dealt with contribution, the court also discussed the matter of indemnity at page 190 of 75 U.S.App.D.C., at page 222 of 126 F.2d as follows:

"This we say on the assumption that there is a manifest distinction, though at times lost sight of, between suits in contribution and suits in indemnity. For, as is often said, the latter implies a primary or basic liability in one person, though a second is also liable with the first to a third. In such a case the discharge of the obligation by the second person leaves him with a right to secure compensation from the one who, as between themselves, is primarily liable. As between such persons,

the obligation 'is not consensual,' but is based altogether upon the law's motion—influenced by an equitable background—of what is fair and proper between the parties. * * * The difference between indemnity and contribution—in cases between persons liable for a wrong—is that in the former the law implies an agreement or obligation and enforces a duty on the primary or principal wrongdoer to respond for all the damages, whereas in the latter, there is no agreement, express or implied, but a common burden in which the parties stand in equali juri and which in equity and good conscience should be equally borne."

2. *Fact that the case (Kendall v. Gore Properties, Inc.) was not tried should not work as a bar to this plaintiff.*

■ St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 26 S.Ct. 400, 50 L.Ed. 712. In this case, an insurance company issued a policy insuring the assured against statutory and common-law liability for damages. After an accident, of which the insurer was notified, the assured was sued, but the insurer refused to defend saying that the accident was not within the risks assumed. The insured settled the suit out of court to avoid a heavy judgment and then sued the insurer. The court, in passing upon the settlement aspect of the case, said at page 182 of 201 U.S., at page 404 of 26 S.Ct.:

"We assume that the settlement was reasonable, and that the plaintiff could not expect to escape at less cost by defending the suits. If this were otherwise, no doubt the defendant would profit by the fact. The defendant did not agree to repay a gratuity, or more than fairly could be said to have been paid upon compulsion. But a sum paid in the prudent settlement of a suit is paid under the compulsion of the suit as truly as if it were paid upon execution."

The insurance company contended that it had agreed to indemnify the insured against loss from statutory or common law liability only and that there was a clear distinction between a contract against liability for damages and a contract of indemnity against loss from liability for damages. Under the latter clause, no liability arises until payment by the assured of a judgment after trial.

Here the court held that the company's refusal to defend the assured amount to such a breach of contract that the assured was released from the agreement not to settle the claim without the company's consent, and in effect was a waiver by the company that it was liable only for judgment against the assured after trial and satisfaction of judgment.

3. *Insanity of Harry Clifford Porter is no defense to this action.*

■ The general rule is that an insane person is liable for compensatory damages for his torts where express malice or evil intent is not a necessary element of the tort. In 89 A.L.R. 476, the principle is stated as follows:

"In upholding a recovery for a homicide committed by an insane person, it was declared that 'an insane person is liable civilly for his torts to the same extent as a sane person, except that punitive damages may not be allowed; and such persons are not liable for torts in which the gravamen of the action is malice, such as slander, libel and malicious prosecution,' in Phillips v. Ward (1931) 241 Ky. 25, 43 S.W. (2d) 331, * * *."

4. *Negligence by the insured does not affect this suit.*

■ Coates v. Potomac Electric Power Co., D.C., 96 F.Supp. 1019. One Coates sued PEPCO for damages for personal injuries. PEPCO filed a third party complaint against the Washington Gas Light Co., which complaint charged that any acts of PEPCO "complained of by Coates, the original plaintiff, were passive and secondary in character, and are actionable, if at all, only because of

the injury resulting to Coates when said acts were combined or coupled with, or had superimposed upon them, the primary and affirmative acts of gross negligence, carelessness, and recklessness on the part of the Gas Company's employees against Coates and Potomac Electric, and on that theory claims judgment against the Gas Company for any sum which Coates may recover from Potomac Electric."

The District Court, Keech, J., on ruling on the motion of the third party defendant to dismiss the third party complaint, held at page 1021 that: "The right to indemnity has been recognized where the negligence of the secondary wrongdoer has been a failure to foresee and take precautions to prevent injury resulting from the act of the primary wrongdoer, * * *."

And continues:

"The court therefore concludes that, however one expresses it—as an implied agreement of indemnity arising from the breach of some duty owed by the primary wrongdoer to the secondary wrongdoer, or indemnity owed the passive wrongdoer by the active wrongdoer, or a claim for consequential damages arising from a separate tort—the amended third-party complaint asserts an independent right of action * * *"

The defendant sets forth the following main points in support of his contention he is not liable:

■ 1. As Harry C. Porter was not a party to the suit of Kendall v. Gore, Civil Action No. 2802–53, and since neither he nor his committee was a party to the settlement of that suit, he cannot be held liable in the present case.

This point is not well taken in this case. The evidence shows that prior to the settlement of the case of Kendall v. Gore, Aetna Casualty and Surety Company notified both this defendant and his committee of its intention to settle the suit and to claim indemnity against Harry Porter. The points and authorities of the plaintiff reveal cases which hold that when a person who is responsible over to another is notified of a pending suit, then the former is no longer regarded as a stranger to the suit and has the right to enter the suit. In cases of this type, it has been held that the judgment will be conclusive against the party so notified, regardless of whether he appears.

2. The settlement by Aetna admits the negligence of Gore Properties.

This contention assumes that when a party defendant settles a negligence case, that in effect, he is admitting negligence. Without determining this point, this Court believes that this is a case which involves primary and secondary wrongdoers. It must also be pointed out, however, that the Court of Appeals in the case of Kendall v. Gore Properties, 98 U.SApp.D.C. 378, 236 F.2d 673, 679, which was the actual case in which Aetna made settlement, stated the following: "The appellant made out, at the very least, a prima facie case of negligence."

■ This Court finds that the defendant Harry C. Porter was the actual tortfeasor or, as he has been referred to, the primary wrongdoer. The negligence of Gore Properties and its agent, Hickey, was secondary only, or passive, in respect to the tort, and as Judge Keech stated in the case of Coates v. Potomac Electric Power Co., D.C., 96 F.Supp. 1019, 1021, "The right to indemnity has been recognized where the negligence of the secondary wrongdoer has been a failure to foresee and take precautions to prevent injury resulting from the act of the primary wrongdoer." It is true that the factual situation in the cited case is different from the present case, but the principle set forth is applicable to a situation such as this.

■ Therefore, assuming Gore Properties and Hickey, its agent, were negligent—and the settlement of the suit by Aetna admits negligence by Gore Properties and Hickey—this does not prevent this plaintiff from recovering in the present suit because of the fact that a second-

ary wrongdoer may look to the party primarily liable.

The Court in the case of George's Radio, Inc. v. Capital Transit Company, 75 U.S.App.D.C. 187, at page 190, 126 F.2d 219, at page 222, stated the following:

"This we say on the assumption that there is a manifest distinction, though at times lost sight of, between suits in contribution and suits in indemnity. For, as is often said, the latter implies a primary or basic liability in one person, though a second is also liable with the first to a third. In such a case the discharge of the obligation by the second person leaves him with a right to secure compensation from the one who, as between themselves, is primarily liable. As between such persons, the obligation 'is not consensual', but is based altogether upon the law's notion—influenced by an equitable background—of what is fair and proper between the parties. * * * The difference between indemnity and contribution—in cases between persons liable for a wrong —is that in the former the law implies an agreement or obligation and enforces a duty on the primary or principal wrongdoer to respond for all the damages, whereas in the latter, there is no agreement, express or implied, but a common burden in which the parties stand in equali juri and which in equity and good conscience should be equally borne."

The foregoing also rebuts the general contentions of the defendant in this case that where one of several wrongdoers has been compelled by his own negligence to pay damages for the tort, he cannot recover from the other wrongdoer and that the rule of subrogation has no application to joint tortfeasors.

3. The defendant contends that the negligence of Gore Properties was the proximate cause of the tort.

This Court believes that while the negligence of Gore Properites was such as to hold it liable, possibly, as between Gore Properties and Kendall, yet once the actor of the deed is involved along with these two parties, it seems obvious that the negligence of Gore Properties becomes remote when the deed of Harry C. Porter is considered, and thus his act must be considered as the primary proximate cause of the death of Codie Whitman and sufficient to such an extent as to hold him primarily liable.

Other contentions of the defendant are answered in the foregoing three points.

This Court, having considered all the evidence, arguments of counsel and points and authorities in support thereof, feels that it must find in favor of the plaintiff and against the defendant in the sum of $16,459.72.

Counsel will submit an appropriate order in conformance with the foregoing.